In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-496 CV


____________________



IN RE THE COMMITMENT OF RODNEY RHYNES






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 05-04-03171-CV






 MEMORANDUM OPINION 


 The trial court ordered the civil commitment of appellant Rodney Rhynes after a jury
found him to be a sexually violent predator ("SVP"). See Tex. Health & Safety Code
Ann. §§ 841.001-841.150 (Vernon 2003 & Supp. 2006). The SVP statute defines "sexually
violent predator" as a person who "(1) is a repeat sexually violent offender; and (2) suffers
from a behavioral abnormality that makes the person likely to engage in a predatory act of
sexual violence." Id. § 841.003. The statute defines "behavioral abnormality" as "a
congenital or acquired condition that, by affecting a person's emotional or volitional
capacity, predisposes the person to commit a sexually violent offense, to the extent that the
person becomes a menace to the health and safety of another person." Id. § 841.002(2). In
two issues, Rhynes challenges the legal and factual sufficiency of the evidence supporting
the jury's verdict. We affirm.

Issue One


 In issue one, Rhynes asserts the evidence is not legally sufficient to establish he
suffers from a behavioral abnormality that makes him likely to engage in a predatory act of
sexual violence. In particular, Rhynes attacks the State's expert testimony as being so
conclusory and speculative that it is not competent. Rhynes also presents a constitutional
argument in issue one, namely that section 841.1461 is unconstitutional. (1) 

 In regard to Rhynes's constitutional argument, we note he does not cite to any
objections in the record to demonstrate that he preserved this error. Generally, to preserve
a complaint for appeal, an appellant must first present his specific contentions to the trial
court. See Tex. R. App. P. 33.1. Our review of the record reveals that appellant never
presented his constitutional complaint to the trial court during or after trial. 

 Almost all error, even constitutional error, is waived if the appellant fails to object to
the error. See Tex. R. App. P. 33.1(a); Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993); 
Aldrich v. State, 104 S.W.3d 890, 894 (Tex. Crim. App. 2003). Rhynes does not argue that
his constitutional complaint falls within an exception to this general rule. We conclude that
Rhynes has waived his constitutional argument.

 In response to his legal sufficiency argument, the State maintains Rhynes failed to
preserve this issue for appeal because he did not object timely at trial. While Rhynes does
not contend he preserved error, he maintains we should review his issue under Coastal
Transport Co. v. Crown Central Petroleum Corp., 136 S.W.3d 227, 232 (Tex. 2004). 

 In Coastal Transport, the Texas Supreme Court determined when objections are
necessary to avoid waiving legal sufficiency challenges to expert testimony. See 136 S.W.3d
at 232. The Court found that no objection was required to preserve a complaint about 
conclusory or speculative opinion testimony since it "is not relevant evidence, because it does
not tend to make the existence of a material fact 'more probable or less probable.'" Id.
(quoting Tex. R. Evid. 401). But, the Coastal Court also concluded "that when a reliability
challenge requires the court to evaluate the underlying methodology, technique, or
foundational data used by the expert, an objection must be timely made so that the trial court
has the opportunity to conduct this analysis." Id. at 233. Thus, for Rhynes to avoid waiver
of his issue, the record must show that the evidence of which he complains is not probative
on its face. See id.; In re Commitment of Barbee, 192 S.W.3d 835, 843 (Tex.
App.-Beaumont 2006, no pet.).

 The record here does not demonstrate that the expert testimony was not probative on
its face. Two experts testified for the State-Dr. Charles Woodrick, a licensed psychologist 
and Dr. Rahn Bailey, a licensed psychiatrist. Both of the State's expert witnesses testified
Rhynes suffers from a behavioral abnormality that makes him likely to reoffend. Both of the
experts testified about meeting with Rhynes, reviewing Rhynes's records, and performing
actuarial assessments (2) of Rhynes before concluding he had a behavioral abnormality. Both
witnesses also identified risk factors related to Rhynes's likelihood to reoffend. Evaluating
the admissibility of Dr. Woodrick's and Dr. Bailey's testimony would require that we
investigate the foundational data that they reviewed before forming their opinions. As
Rhynes did not make a timely objection to the testimony of these two experts, he has not
preserved his complaint. Issue one is overruled. 

Issue Two


 In his second issue, Rhynes argues that the evidence is not factually sufficient to
support the jury's finding on behavioral abnormality. Question one asked the jury: "Do you 





find that Rodney Rhynes suffers from a behavioral abnormality that makes him likely to
engage in a predatory act of sexual violence?" The jury answered, "Yes." 

 Because the SVP statute requires the State to prove beyond a reasonable doubt that
Rhynes is a sexually violent predator, we apply the standard of review used in criminal cases
for challenges to the sufficiency of the evidence. See Tex. Health & Safety Code Ann.
§ 841.062 (Vernon 2003); See In re Commitment of Mullens, 92 S.W.3d 881, 885 (Tex.
App.-Beaumont 2002, pet. denied) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979)). In a factual sufficiency review, we view the evidence in a
neutral light and reverse only if we conclude, from some objective basis in the record, that
the great weight and preponderance of evidence contradicts the jury's verdict. See Watson
v. State, 204 S.W.3d 404, 414, 417 (Tex. Crim. App. 2006). We cannot determine that a
finding is "clearly wrong" or "manifestly unjust" simply because had we been the factfinder
we might have found otherwise. Id. In examining a factual sufficiency challenge, we defer
to the factfinder's determination of the credibility of the evidence. Swearingen v. State, 101
S.W.3d 89, 97 (Tex. Crim. App. 2003).

Evidence


 The jury heard Rhynes testify by a videotaped deposition. In his deposition, Rhynes
admitted two convictions of aggravated sexual assault. Rhynes also admitted specific details
about both offenses. Regarding his first offense, Rhynes admitted that he sexually assaulted
a neighbor, a nine year old girl, after entering her home through a back window. Rhynes said
that he did not really think about why he committed the offense but claimed he was following
the lead of a friend in an attempt to "belong." As to the second offense, Rhynes admitted
entering the victim's room and locking the door. He admitting pushing her onto the bed
when she refused his sexual advances, fondling her, biting her, sexually assaulting her,
poking her breasts with a knife, and slapping her. Rhynes also testified that he sold drugs
and that he used drugs on a daily basis prior to his arrest. He further agreed that he acted
impulsively or on the "spur of the moment." 

 The jury also heard two experts-Dr. Bailey and Dr. Woodrick-testify that Rhynes
suffers from a behavioral abnormality. These experts testified about specific risk factors that
increase Rhynes's likelihood to reoffend. According to Dr. Bailey, Rhynes's specific risk
factors included: his struggle with impulsivity; his failure to control sexual urges; his
aggression; his use of controlled substances; his prison offenses; and his difficulty controlling
his anger. Dr. Woodrick diagnosed Rhynes with an antisocial personality disorder ("APD"). 
Woodrick noted the following risk factors indicating Rhynes was likely to reoffend: his use
of aliases; his difficulties participating in the Sex Offender Treatment Program ("SOTP") (3);
his high scores on the actuarials; his limited positive interactions in free society; his history
of non-sexual offenses as a juvenile; and his difficulty controlling his sexual urges. 

 The jury further heard the testimony of Dr. Timothy Branaman, a psychologist who
was Rhynes's expert. Dr. Branaman disputed the testimony of the State's experts. Dr.
Branaman testified he did not believe Rhynes had difficulty controlling his behavior or
sexual urges. Dr. Branaman also testified he did not believe there was a basis to diagnose
Rhynes with APD. Dr. Branaman stated that because Rhynes had spent the majority of his
adult life institutionalized, there was no adequate sample of his behavior in the community. 
Dr. Branaman explained that a diagnosis of a personality disorder requires not just that the
features be present in the individual, but that the features be pervasive throughout an
individual's life as an adult as well as a juvenile. Dr. Branaman also contested the accuracy
of the actuarial scores that the State's experts gave to Rhynes. 

 On cross-examination, Dr. Branaman agreed that Rhynes used force to commit his
offenses. Further, Dr. Branaman agreed that Rhynes used threats to carry out his second
offense and had traits of APD. For example, Dr. Branaman stated that Rhynes met the
necessary prerequisite for APD because he had conduct disorder as a juvenile. Further,
Branaman agreed that Rhynes's use of aliases is a trait of APD. Dr. Branaman also agreed
that Rhynes may have some difficulty controlling his behavior. 

 Under cross-examination, Dr. Bailey admitted that one of the tests he performed on
Rhynes had no validity in predicting sexual recidivism. He also admitted an error in scoring
a question on one of the tests and possibly on a second test. Dr. Bailey also testified that,
even accounting for possible errors in his testing, he remained of the opinion that Rhynes
suffers from a behavioral abnormality that placed him at risk for reoffending. 

 In this case, the jury heard conflicting testimony on whether Rhynes has a behavioral
abnormality making it likely that he will reoffend and found against Rhynes. We defer to the
factfinder's determination of the credibility of the evidence. Swearingen, 101 S.W.3d at 97. 
After viewing all of the evidence in a neutral light, we find that the jury rationally could have
found that Rhynes has a behavioral abnormality making it likely that he will reoffend. See
Watson, 2006 WL 2956272, at *8. The State's expert witnesses provided evidence that
supports the jury's finding. Though Rhynes's expert contradicted the State's experts, the
issue of the evidence's credibility is one for the jury to decide. We find no objective basis
in the record that would allow us to conclude that the great weight and preponderance of
evidence contradicts the jury's verdict. Id. at *10. We overrule issue two. The trial court's
judgment is affirmed.

 AFFIRMED.

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on September 14, 2006

Opinion Delivered December 14, 2006

Before McKeithen, C.J., Kreger and Horton, JJ.
1. Rhynes argues Health and Safety Code section 841.1461 is unconstitutional because
it improperly attempts to determine the meaning of section 15-a, Article I of the Texas
Constitution. Section 841.1461 states: "A person who suffers from a behavioral abnormality
as determined under this chapter is not because of that abnormality a person of unsound mind
for purposes of Section 15-a, Article I, Texas Constitution." Tex. Health & Safety Code
Ann. § 841.1461 (Vernon Supp. 2006).

 Citing Neeley v. West Orange-Cove Consolidated Independent School District , 176
S.W.3d 746, 777 (Tex. 2005), Rhynes maintains that the judiciary is the "final authority" in
determining adherence to the Constitution. Article I, section 15-a is entitled "Commitment
of Persons of Unsound Mind" and provides, in part, that "[n]o person shall be committed as
a person of unsound mind except on competent medical or psychiatric testimony. The
Legislature may enact all laws necessary to provide for the trial, adjudication of insanity and
commitment of persons of unsound mind and to provide for a method of appeal from
judgments rendered in such cases." Tex. Const. art. I, § 15-a. In addition, Rhynes argues
that "it beggars common sense for the law of Texas to be that a person who suffers from a
behavioral abnormality that makes the person likely to engage in a predatory act of sexual
violence is not a person of unsound mind." 
2. Dr. Woodrick explained that an "actuarial" is an assessment using "items which have
proven to be of predictive value in determining whether an individual has a proclivity toward
repeating" behaviors similar to those they have performed in the past. 
3. Dr. Bailey explained that the Sex Offender Treatment Program is a group therapy
program for sex offenders. He described it as a "psychoeducational program [for offenders]
to talk about and address how [their offenses] happened and what [they were] thinking and
what behaviors [they] could have used to avoid [the offense]. . . ."