COASTAL TRANSPORT COMPANY, INC., Petitioner,

v.

CROWN CENTRAL PETROLEUM CORP., Respondent.

No. 01–0301.

Supreme Court of Texas.

Argued on Dec. 4, 2002.

Decided May 14, 2004.

---

Wayne Fisher, pro se.

David M. Heilbron, for Amicus Curiae General Motors Corporation.

Richard P. Hogan Jr., for Amicus Curiae Mel Anthony Harper, et al.

Henry S. Platts, Wilton F. Chalker, Henry S. Platts, for other interested parties.

Robert B. Dubose, Robert M. Greenberg, Dana C. Livingston Cobb, Robert E.

Motsenbocker, for Coastal Transport Company, Inc.

Robert M. Roach Jr., for Coastal Transport, Inc.

John L. Hagan, M. Michael Meyer, for Crown Central Petroleum Corp.

Justice SCHNEIDER delivered the opinion of the Court.

In this case, Crown Central Petroleum Corporation sued Coastal Transport for negligence and gross negligence after a Coastal gasoline truck caused a fire that destroyed a Crown Central gasoline-loading facility. We must decide whether Coastal waived its right to complain that there is legally insufficient evidence of gross negligence. The court of appeals held that Coastal's failure to object to the admission of expert testimony on gross negligence waived any complaint that the testimony had no probative value. 38 S.W.3d 180, 190. We disagree.

We conclude that such an objection is required only when a challenge to expert testimony questions the underlying methodology, technique, or foundational data used by the witness. A *Daubert/Robinson* challenge to the reliability of a scientific process or technique, for example, must be timely made in order to allow the court to exercise its gatekeeper function. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 411 (Tex.1998). In this case, however, Coastal does not challenge the particular methodology underlying the expert testimony; instead, Coastal simply argues that the testimony is non-probative on the face of the record. Consequently, we hold that Coastal did not waive its challenge to the legal sufficiency of the evidence. After reviewing the record, we conclude that there is legally insufficient evidence to support Crown Central's gross-negligence claim. We therefore reverse the judgment

of the court of appeals and render judgment that Crown Central take nothing.

## I. Background

Crown Central Petroleum Corporation owned a bulk loading facility in Pasadena, Texas, where gasoline and petroleum products were pumped into tank transport trucks. In September 1993, a Coastal Transport Company truck driver was loading a Coastal truck at the facility. The driver attempted to put more gasoline in the truck than the truck could hold. Because gasoline loads into the trucks at 500 to 600 gallons per minute, the overfill resulted in the spill of more than a hundred gallons of gasoline. An engine in a nearby truck ignited gasoline vapors from the spill. The ignition caused an explosion and fire that destroyed the facility and severely burned the driver.

Coastal's trucks were equipped with probes that were designed to sense when the gasoline tanks were full and to prevent additional gasoline from being pumped into an already-full tank. However, the probe in this case malfunctioned, and failed to prevent the tank from being overfilled. Crown Central filed suit, alleging that Coastal was negligent in failing to train its drivers in proper loading methods and in failing to maintain and equip its trucks in a manner that would prevent overfill.

Crown Central also alleged that Coastal was aware of defective probes in its fleet and failed to inspect or replace them. Crown Central argued that Coastal's failure to replace probes it knew to be defective demonstrated that its breach of care was committed in a wanton and willful manner, and that it was therefore entitled to an award of exemplary damages.

At a jury trial, after Crown Central completed its case-in-chief, the trial court granted Coastal's motion for a directed verdict on the ground that the evidence did not support a finding of gross negligence, thus disallowing Crown Central's claim for exemplary damages. Crown Central's remaining negligence claim against Coastal was submitted to the jury.

The jury found that Coastal was negligent and that its negligence proximately caused the accident; it allocated 75 percent of the responsibility to Coastal and 25 percent to the manufacturer of the probes. The jury also found that Crown Central's injury was temporary rather than permanent. The jury found that $894,363 would reasonably compensate Crown Central for the loss of its facility, and the trial court therefore held Coastal liable for 75 percent of this amount, or $670,773. Coastal elected to reduce the amount of damages by a credit equal to the dollar amount of Crown Central's prior settlement with another party. Act of June 16, 1985, 69th Leg., R.S., ch. 959 § 1, 1985 Tex. Gen. Laws 3271, *repealed by* Act of June 11, 78th Leg., R.S., ch. 204, § 4.10(6), 2003 Tex. Gen. Laws 859. Because the settlement amount was larger than the award of damages, the trial court rendered a take-nothing judgment.

Crown Central appealed the trial court's judgment, arguing that the jury's finding on the permanence of its damages was against the great weight and preponderance of the evidence or, alternatively, that the damages should be considered permanent as a matter of law. Crown Central also argued that the trial court's directed verdict in Coastal's favor on the issue of exemplary damages was erroneous.

The court of appeals affirmed the jury's finding that Crown Central's injury was temporary, but reversed the trial court's directed verdict on the issue of exemplary damages. 38 S.W.3d 180, 191. The court of appeals noted that Crown Central pre-

sented evidence of gross negligence through the testimony of one of its expert witnesses, Arthur Atkinson, who testified that, in his opinion, Coastal acted with conscious indifference toward a risk of which it was subjectively aware. *Id.* at 189–90. The court then concluded that our decision in *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402 (Tex.1998), in which we held that a party who fails to object to expert opinion testimony as unreliable before or during trial may not attack the scientific reliability of its opponent's experts after a verdict has been issued, precluded Coastal's no-evidence challenge on the issue of gross negligence. 38 S.W.3d at 189–90. The court of appeals therefore held that there was sufficient evidence of gross negligence to overcome a directed verdict on exemplary damages, and remanded the case to the trial court. *Id. at* 191.

Coastal filed a petition for review in this Court, contending that the court of appeals misapplied the holding of *Maritime Overseas.* Coastal also claims that Crown Central's evidence of gross negligence is legally insufficient. Crown Central filed a cross-petition for review, claiming the court of appeals erred in determining that its injuries were temporary rather than permanent.

## II. Coastal's Legal Sufficiency Challenge

Coastal argues that there is no evidence in the record to support Crown Central's allegation of gross negligence. In *Transportation Insurance Co. v. Moriel,* we explained that gross negligence involves two components: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex.1994). In this case, the parties' dispute centers on the second prong C specifically, whether there was evidence that Coastal was consciously indifferent to the risk of harm.

Crown Central argues that the testimony of its trucking-safety expert, Arthur Atkinson, provides some evidence of conscious indifference; Crown Central notes that Coastal did not object either to Atkinson's qualifications or to the reliability of his testimony. Crown Central argues that a particular colloquy, in which Atkinson opined on the elements of gross negligence, provided "some evidence" of each of the elements of gross negligence:

Q: When viewed objectively from Coastal's point of view at the time of the September '93 incident, in your opinion, did Coastal's failure to stop using probes that could have [sensor failure] problems, did that involve a high degree of risk, considering the probability and magnitude of the potential harm to others?

A: Yes, it did, very high.

Q: In your opinion, did Coastal have an actual subjective awareness of the risk involved in failing to stop using probes that can have [sensor failure] problems?

A: Yes, again and again.

Q: And in your opinion, did Coastal nevertheless proceed with conscious indifference to the rights, safety, or welfare of others?

A: That's the only conclusion I can draw.

Coastal, on the other hand, argues that Atkinson's testimony amounted to no more than a "bare conclusion" that was "factually unsubstantiated" and therefore consti-

tuted no evidence of conscious indifference to support Crown Central's gross negligence claim. Relying upon our opinion in *Maritime Overseas*, the court of appeals held that Coastal waived its right to assert "that such expert testimony constituted no evidence to support a finding of gross negligence" because it did not object to the quoted colloquy as unreliable. 38 S.W.3d at 190. We disagree that an objection is needed to preserve a no-evidence challenge to conclusory expert testimony.

■ We noted in *Burrow v. Arce* that, although expert opinion testimony often provides valuable evidence in a case, "it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness." *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex.1999). Opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact "more probable or less probable." *See* Tex.R. Evid. 401. This Court has labeled such testimony as "incompetent evidence," and has often held that such conclusory testimony cannot support a judgment. *Cas. Underwriters v. Rhone*, 134 Tex. 50, 132 S.W.2d 97, 99 (1939) (holding that a witness's statements were "but bare conclusions and therefore incompetent"); *see also Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex.1997) ("[A]n expert witness's conclusory statement ... will neither establish good faith at the summary judgment stage nor raise a fact issue to defeat

summary judgment."). Furthermore, this Court has held that such conclusory statements cannot support a judgment even when no objection was made to the statements at trial.[1] *Dallas Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377, 380 (1956) ("It is well settled that the naked and unsupported opinion or conclusion of a witness does not constitute evidence of probative force and will not support a jury finding even when admitted without objection."); *Rhone*, 132 S.W.2d at 99 (holding that "bare conclusions" did not "amount to any evidence at all," and that "the fact that they were admitted without objection add[ed] nothing to their probative force"); *see also Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex.1997) ("When the expert 'brings to court little more than his credentials and a subjective opinion,' this is not evidence that would support a judgment. . . . If for some reason such testimony were admitted in a trial without objection, would a reviewing court be obliged to accept it as some evidence? The answer is no.").

Crown Central concedes that, under our earlier cases, even unobjected-to conclusory testimony cannot be "some evidence" to support a judgment. Crown Central argues, however, that our decision in *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402 (Tex.1998), overruled this earlier line of cases and required an objection to preserve a no-evidence complaint with regard to expert testimony. In *Maritime Overseas*, we held that "[t]o preserve a complaint that scientific evidence is unreliable and thus, no evidence, a party must object

---

1. In the past, hearsay evidence was also considered to be "incompetent" evidence and therefore insufficient to support a judgment even if admitted without objection. *Henry v. Phillips, 105 Tex. 459, 151 S.W. 533, 538 (1912).* An amendment to the Texas Rules of Evidence in 1983 changed this rule with regard to hearsay evidence, but it did not change the general rule with regard to other types of "incompetent" evidence. Tex.R. Evid. 802 ("Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay."); *see also Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 418 (Tex.1998) (Hecht, J., dissenting).

to the evidence before trial or when the evidence is offered." *Id.* at 409. Crown Central argues that an objection is necessary to protect the trial court's discretion as a "gatekeeper ... responsible for making the preliminary determination of whether the proffered testimony" meets reliability standards. *Id.* at 409.

We believe that *Maritime Overseas* is distinguishable, however. In that case, the expert's underlying methodology was at issue: the defendant argued that "the court of appeals should have examined whether any well-founded scientific methodology supported the jury's actual damages award." *Id.* at 405. We concluded that examination of the expert's underlying methodology was a task for the trial court in its role as gatekeeper, and was not an analysis that should be undertaken for the first time on appeal. *Id.* at 412. This rule allows the trial court to exercise its discretion in making a determination of whether the expert testimony is sufficiently reliable. *Id.* It also ensures that a full record will be developed, and that appellate courts will be able to evaluate the legal and factual sufficiency of the evidence without looking beyond the appellate record. *Id.*

Even in *Maritime Overseas,* however, we recognized that an objection to the admissibility of the expert testimony may not be needed to preserve every no-evidence challenge; instead, we drew a distinction between challenges to an expert's scientific methodology and "no evidence challenges where, on the face of the record, the evidence lacked probative value." *Id. at 412.* When the expert's underlying methodology is challenged, the court "necessarily looks beyond what the expert said" to evaluate the reliability of the expert's opinion. *Havner,* 953 S.W.2d at 712.

When the testimony is challenged as conclusory or speculative and therefore non-probative on its face, however, there is no need to go beyond the face of the record to test its reliability. We therefore conclude that when a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis. However, when the challenge is restricted to the face of the record C for example, when expert testimony is speculative or conclusory on its face C then a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility.

Because we conclude that *Maritime Overseas* did not change the general rule that bare conclusions C even if unobjected to C cannot constitute probative evidence, we hold that Coastal did not waive its no-evidence challenge in this case. With regard to the conscious indifference prong of Crown Central's gross-negligence claim, we agree that the Atkinson testimony quoted above was too conclusory to defeat a motion for a directed verdict. We therefore review the record to see if there is other evidence of conscious indifference to support Crown Central's gross-negligence claim.

### III. Evidence of Gross Negligence

The trial court granted Coastal's motion for a directed verdict on the issue of gross negligence, thus disallowing Crown Central's claim for exemplary damages. In reviewing the granting of a directed verdict, we must determine whether there is more than a scintilla of evidence to raise a fact issue on the question of gross negligence.[2] *Collora v. Navarro,* 574

---

2. The law in effect when Crown Central filed

suit merely required that the plaintiff prove

S.W.2d 65, 68 (Tex.1978). We consider all of the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence. *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983). If the evidence supporting a finding of gross negligence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," it constitutes more than a scintilla of evidence and the case must be reversed and remanded for a jury determination. *Moriel*, 879 S.W.2d at 25. Coastal does not challenge the objective element of gross negligence C that the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Consequently, the question before us is whether the subjective element has been met.

The subjective element of gross negligence requires evidence that Coastal was aware of the risk involved, but nevertheless proceeded in conscious indifference to the rights, safety, or welfare of others. *Moriel*, 879 S.W.2d at 23; Tex. Civ. Prac. & Rem.Code § 41.003(a)(3), (b).

Crown Central argues that evidence that Coastal failed to ensure that all defective probes were replaced is some evidence of conscious indifference. But the record reflects that the truck in question was sent for servicing shortly before the accident, and that the probe in question was replaced at that time. There is no evidence that Coastal was consciously indifferent to the repair request.

■ Crown Central also argues that Coastal demonstrated conscious indifference by failing to ensure that it did not replace the probe with another defective probe. Coastal had obtained some new replacement probes after a 1989 spill, and the replacement probes were not thought to be defective at the time of the 1993 accident. Crown Central argues that Coastal may have replaced the probe with one of the older probes that was known to have problems, instead of using one of the replacement probes. In support of this argument, Crown Central cites testimony that the replacement probes were visually indistinguishable from the older-model probes, and that it was the usual practice in the industry for probes to remain in a transport company's inventory for three to five years prior to use. From this, Crown Central argues that a reasonable person could conclude that Coastal knowingly maintained older-model probes in its Houston inventory, and that it demonstrated conscious indifference by replacing the probe in question with one of these older-model defective probes. We disagree.

While it is certainly possible that the probe was replaced by an older-model defective probe, there is simply no evidence that Coastal knowingly maintained such probes in its inventory and placed one in the truck that caused the explosion. It is true that there was testimony that the probe was replaced out of Coastal's inventory stock, and there was testimony that, industry-wide, it is not uncommon for probes to remain on the shelf for several years before use. But speculation that Coastal *may* have followed the general industry practice falls short of establishing conscious indifference and is no evidence

gross negligence by a preponderance of the evidence; legislation requiring clear and convincing evidence had not yet taken effect. Act of April 11, 1995, 74th Leg., R.S., ch. 19, _1,

eff. Sept. 1, 1995. We therefore conduct a traditional legal sufficiency analysis in this case.

of Coastal's actual awareness that a defective, older-model replacement probe would be placed in its truck. Because there was no evidence that Coastal had actual, subjective knowledge of defective probes in its inventory, and yet proceeded to act in conscious indifference to the risk posed by such probes, we hold that the trial court properly granted Coastal's motion for a directed verdict on gross negligence.

## IV. Market Value v. Cost to Rebuild

■ Crown Central contends that the court of appeals erred in affirming the trial court's decision to render judgment based on the cost to rebuild Crown Central's facility, and that the trial court should have instead rendered judgment based on the land's diminution in value after the accident. In this case, the jury concluded that the difference in property value before and after the injury was significantly greater than the amount it would cost to compensate Crown Central both for its loss of use and for the cost to rebuild the facility. Crown Central claims that the injury to its land was permanent as a matter of law because its loading facility was completely destroyed, and that any permanent injury should be compensated by market-value damages. Coastal, on the other hand, argues the jury verdict is supported by evidence that the terminal could be rebuilt to its former condition, and that Crown Central would be overcompensated if it were awarded more money than required to rebuild the facility.

The evidence at trial supported the jury's finding that Crown Central can rebuild its loading facility to its former condition. We hold that Crown Central was therefore entitled to recover only the amount of money necessary to rebuild its facility and to compensate for its loss of use during the interim, as this amount was sufficient to place Crown Central "in the same position [it] occupied prior to the injury." *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978); *see also Pacific Express Co. v. Lasker Real Estate Ass'n*, 81 Tex. 81, 16 S.W. 792, 793–94 (1891). Because Crown Central had previously obtained a third-party settlement for more money than it would cost to compensate Crown Central both for its loss of use and for the expense of rebuilding the facility, the trial court correctly rendered a take-nothing judgment. *See* Act of June 16, 1985, 69th Leg., R.S., ch. 959 § 1, 1985 Tex. Gen. Laws 3271, *repealed by* Act of June 11, 78th Leg., R.S., ch. 204, § 4.10(6), 2003 Tex. Gen. Laws 859.

## V. Conclusion

For the foregoing reasons, we reverse the court of appeals' judgment and render judgment that Crown Central take nothing.