IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-0557

════════════

 

Volkswagen of America, Inc.,
Petitioner,

 

v.

 

Andrew Ramirez, Sr., et al.,
Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Thirteenth District
of Texas

════════════════════════════════════════════════════

 

 

Argued
April 23, 2003

 

 

Justice Hecht,
joined by Justice Owen,
concurring.

 

 

I join fully in the Court’s opinion and add only a
brief additional response to the dissent.

In essence, Dr. Edward Cox, who testified as an
expert for the plaintiffs, established the following facts: he has a doctorate
in theoretical and applied mechanics; he has extensive experience in
metallurgy; he owns an electron microscope; and he has used that microscope to
examine a wheel bearing on the decedent’s vehicle.  He then testified that, based on his
credentials, his experience, and the tools available to him, the bearing was
defective because (1) the adjustment nut was too loose, (2) the car had been
cinched down too tightly when it was originally transported for sale, and (3)
there were temperature inconsistencies in the manufacturing process.  These defects, Dr. Cox concluded, show that
bearing failure did not result from the accident, but caused it.  In the dissent’s view, Dr. Cox’s opinion
about what happened is some evidence that it actually did happen.[1]

It is not. 
There is in the evidentiary record one thing, and only one, to connect
microscopic thread tearings with loose nuts, false brinell marks on rollers in a bearing assembly with tight
cinching in transit, and metal fragments with temperature inconsistencies in
the manufacturing process C
in other words, to connect Dr. Cox’s observations with his conclusions C and that is: Dr. Cox’s say-so.  Whether his conclusions were valid cannot, on
this record, be measured by objective tests that actually associate microscopic
conditions with producing causes, or by statistical correlations between such conditions
and bearing failures, or by analyses in the professional literature of the
science of metallurgy.  We have no such
evidence.  On this record, whether Dr.
Cox’s conclusions were valid can be measured by one thing, and one thing only:
his personal credibility.

Personal credibility may well be a determining
factor in assessing the testimony of a fact witness, but we require more of an
expert witness, lest a very convincing charlatan in a lab jacket pull the wool
over laymen’s eyes.  We have reiterated
that “a claim will not stand or fall on the mere ipse dixit
of a credentialed witness.”[2]  It is not enough that an expert seem
credible.  An expert must show that his
views have the support of established, objective observations or a
well-considered consensus of at least a substantial segment of the scientific,
technical, or specialized community to which he belongs.  Dr. Cox did neither.

The dissenting Justices would surely never allow
me to testify that I have degrees from distinguished universities, that I have
long been interested in aberrant behavior, that I have access to an electron
microscope, that I have studied the dissenting Justices’ DNA, and that they are, sad truth to tell, extraterrestrials.  Even if all of the premises were true (some
are not), my colleagues in dissent would have a powerful argument that the only
bridge between my credentials, experience, and observations on one side, and my
opinions on the other, is my own veracity, which is not enough.  Such opinions cannot rest on mere belief
convincingly expressed.  They provide no
support for a proposition over which other experts like myself may disagree,
leaving the matter for a jury to decide. 
Such opinions are no legal evidence at all.

Thus, the dissent is simply wrong when it argues
that to disregard Dr. Cox’s opinions is to reweigh the evidence.  One cannot reweigh evidence that weighs
zero.  Dr. Cox’s opinions rested solely
on his own credence.  I do not mean for a
moment to disparage his credentials, experience, or observations.  But the integrity of metallurgical science requires
that the assertions of one person, however qualified and experienced, be based
in the science itself.  The ultimate
opinions Dr. Cox expressed in this case are precisely the sort of conclusory opinions that are not legal evidence to support
a claim.

 

                                                                             

Nathan L. Hecht

Justice

 

 

Opinion delivered: December 31, 2004











[1] Post at ___.





[2] Coastal Transp.
Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 232 (Tex.
2004); Burrow v. Arce, 997 S.W.2d 229, 235
(Tex. 1999) (citing Gammill v. Jack
Williams Chevrolet, Inc., 972 S.W.2d 713, 726‑727 (Tex. 1998) (citing
General Elec. Co. v. Joiner, 522 U.S. 136, 146, (1997)); Merrell Dow Pharm., Inc. v. Havner, 953
S.W.2d 706, 711‑712 (Tex. 1997); Schaefer v. Texas Employers’ Ins. Ass’n, 612 S.W.2d 199, 202‑204 (Tex. 1980)).