In The 



Court of Appeals



Ninth District of Texas at Beaumont


________________



NO. 09-08-00504-CV


 _____________________



IN RE COMMITMENT OF WILLIE BROOKS






On Appeal from the 435th District Court


Montgomery County, Texas


Trial Cause No. 08-02-01918 CV







MEMORANDUM OPINION


 The State filed a petition seeking to involuntarily civilly commit Willie Brooks. See
Tex. Health & Safety Code Ann. §§ 841.001-.150 (Vernon 2003 & Supp. 2008). The jury
found him to be a sexually violent predator. See Tex. Health & Safety Code Ann. §
841.003 (Vernon 2003). Brooks appeals from the trial court's final judgment and order of
civil commitment.

 The SVP statute defines "sexually violent predator" as a person who "(1) is a repeat
sexually violent offender; and (2) suffers from a behavioral abnormality that makes the
person likely to engage in a predatory act of sexual violence." Id. § 841.002(9) (Vernon
Supp. 2009); § 841.003. Brooks previously had pled guilty to and was convicted of two
offenses of sexual assault, one conviction in 1986 and one in 1994; he has been incarcerated
since the 1994 conviction. The Act defines "[b]ehavioral abnormality" as "a congenital or
acquired condition that, by affecting a person's emotional or volitional capacity, predisposes
the person to commit a sexually violent offense, to the extent that the person becomes a
menace to the health and safety of another person." Id. § 841.002(2) (Vernon Supp. 2008). 
 In issue one, Brooks argues the evidence is legally insufficient, because the testimony
of expert witnesses Dr. Arambula and Dr. Proctor is speculative and conclusory and lacks
the probative force required to support the verdict. He asserts their diagnoses rely on
conjecture. Brooks also argues the evidence relied on by Dr. Proctor does not establish
Brooks has a behavioral abnormality, as defined in the Act. Brooks asserts he did not need
to object to the speculative or conclusory expert testimony. 

 The Supreme Court has explained that "conclusory opinions are legally insufficient
evidence to support a judgment even if the party did not object to the admission of the
testimony." City of San Antonio v. Pollock, No. 04-1118, 2009 WL 1165317, at *5 (Tex.
May 1, 2009) (citing Coastal Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227,
232 (Tex. 2004)). If there is no basis offered for the expert's opinion or if the basis offered
provides no support, the opinion is considered conclusory and not probative evidence. Id.
at *6. If the opinion has a supporting basis, but there is a reliability challenge that requires
the court to evaluate the underlying methodology, technique, or foundational data, an
objection "must be timely made so that the trial court has the opportunity to conduct this
analysis." Id. at *5 (quoting Coastal Transp. Co., 136 S.W.3d at 233). Here, there was no
objection to the testimony of either witness on grounds of unreliability.

 Chapter 841 requires the State to prove that a person is a sexually violent predator
beyond a reasonable doubt. See Tex. Health & Safety Code Ann. § 841.062(a) (Vernon
2003). As a result, although this is a civil case, on appeal we review legal sufficiency issues
by the standard of review applied in criminal cases for legal sufficiency. In re Commitment
of Mullens, 92 S.W.3d 881, 885 (Tex. App.--Beaumont 2002, pet. denied) (citing Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We review the
evidence at trial to decide if a rational jury could have found beyond a reasonable doubt that
Brooks suffers from a behavioral abnormality that makes him likely to engage in a predatory
act of sexual violence. See id. at 887. 

 The State presented two expert witnesses. Dr. Proctor, board certified in forensic
psychology, testified he reviewed records normally relied on by experts in the field to arrive
at his opinion. He also interviewed Brooks. Proctor reviewed Brooks's offense reports,
prison records, medical records, his extensive criminal history, and the results of his
evaluation for the Sex Offender Treatment Program. Proctor diagnosed Brooks with
"antisocial personality disorder, which accounts for a long history of having trouble
following the rules and guidelines of society." In addition, Proctor diagnosed Brooks with
borderline intellectual functioning, alcohol (1) and marihuana dependence, and sexual abuse of
an adult. While Brooks was on probation for the first sexual assault offense, his probation
was revoked for delivery of a controlled substance. He committed the second sexual assault
offense while he was on probation for DWI. Based on his review of the records, Proctor
indicated Brooks chose strangers, one of whom was six months pregnant at the time of the
sexual assault. In his initial statement to the police, Brooks apparently stated he did not know
the women; at trial he indicated he did. Both victims told the police they did not know
Brooks. Proctor explained that choosing a stranger as a victim is indicative of a heightened
risk of reoffending.

 Committing his crimes in the middle of the night, Brooks used physical force to
sexually assault his victims. Proctor considered the sexual assaults to be representative of
a pattern and indicated that the conduct went to the weight of Brooks's behavioral
abnormality. Proctor testified that apparently Brooks was stimulated by the act of forcing
a person to have sex. Brooks minimized his role or denied he committed the offenses, which,
Proctor explained, is significant in determining whether a person has a behavioral
abnormality. The fact that Brooks preys on his victims is also indicative of a behavioral
abnormality. Proctor testified Brooks showed no remorse for the offenses or took any
responsibility for them. As Proctor explained, "[I]f someone is not even accepting what
they've done previously, it raises concern about what might happen in the future."

 On the actuarial tests, which assist in ascertaining certain risk factors for reoffending, 
Proctor scored Brooks in the moderately high range on the Static-99 test. On the Mn-SOST, 
Proctor scored him in the high risk group. On the Hare Psychopathy Checklist Revised,
Proctor ultimately scored Brooks at 29.5. A score of 30 is the usually accepted cutoff for a
diagnosis of psychopathy. Proctor testified, "That's right at the level of psychopath. So it's
consistent with someone who does have psychopathy." On all of the actuarials, Proctor
scored Brooks at a moderate to high risk level.

 Proctor found both negative and "positive and protective factors" in Brooks's record. 
Based on the testing, the interview, and a review of the various records, Proctor diagnosed
Brooks as having a behavioral abnormality that makes him likely to engage in a predatory
act of sexual violence.

 Dr. Arambula, board certified in general psychiatry and in forensic psychiatry,
testified he performed a psychological evaluation of Brooks and interviewed him. Like
Proctor, Arambula reviewed prison records, offense reports, criminal history, medical
records, and the results of Brooks's evaluation from the Sex Offender Treatment Program. 
Based on his review of the records and his interview with Brooks, Arambula diagnosed
Brooks with sexual abuse of an adult, polysubstance dependence in remission, borderline
intellectual functioning, and antisocial personality disorder.

 Arambula testified to three positive factors in Brooks's record that would possibly
weigh against reoffending: his employment history, his age, and the ability to behave fairly
acceptably in prison. However, Arambula also described numerous negative risk factors for
reoffending: past convictions for sexual offenses, minimization or denial of commission of
the offenses, lack of empathy for the victims, and the fact that there was more than one
sexual assault. Arambula testified Brooks saw himself as a victim and did not acknowledge
any responsibility for the sexual assaults. Arambula also pointed to additional risk-of-reoffending factors, such as Brooks's performing multiple sex acts on one victim, his long
arrest record, his long history of polysubstance abuse, his long history of antisocial conduct,
borderline intellectual functioning, a major disciplinary infraction in prison, and his lack of
treatment. Arambula described Brooks as a predator -- someone with aggressive behavior
or urges who looks for victims he knows he can exploit. Arambula testified that Brooks
suffers from a behavioral abnormality and testified to reasons that Brooks would be likely
to reoffend.

 Proctor and Arambula explained, from their review of the records before them and
their interviews with Brooks, the characteristics and conduct of Brooks that demonstrate his
behavioral abnormality, as defined in the Act. They explained in detail the risk factors that
make him likely to engage in a predatory act of sexual violence. The opinions they expressed 
had a reliable basis in the record, and their testimony was probative to establish beyond a
reasonable doubt that Brooks suffered from a behavioral abnormality that makes him likely
to engage in a predatory act of sexual violence. The testimony was not conclusory or
speculative. 

 Dr. Shursen, a licensed professional counselor and licensed sex offender treatment
provider, testified for Brooks. She performed actuarial tests, reviewed Brooks's file, and
conducted a personal interview with him. She concluded that Brooks does not suffer from
a "behavioral abnormality that makes him a menace to society." Shursen believed Brooks
had the ability to stop his alcohol and drug use in view of the fact that he had been diagnosed
with health problems. She understood that he had stopped using alcohol and drugs. She did
not find troubling the inconsistencies between Brooks's narrative of the events and the
evidence found in the record. Based on her review of the records provided to her and on her
interview with Brooks, she concluded there was sexual abuse of an adult; Brooks did not
have an antisocial personality disorder; he was not suffering from psychopathy; and the
victims and Brooks were not strangers. Her assessment was that Brooks "ha[d] made
changes in his life" and stopped using drugs and alcohol; his age made him less of a risk to
recidivate; he desired employment; he was interested in finding his family; and his risk for
recidivism was moderate.

 The jury determines the credibility of the witnesses and the weight to be given their
testimony. In re Commitment of Mullens, 92 S.W.3d at 887 (citing Barnes v. State, 876
S.W.2d 316, 321 (Tex. Crim. App. 1994)). Conflicts and contradictions in the evidence may
be resolved by believing all, part, or none of the witnesses' testimony. Id. (citing Losada v.
State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)). Further, a jury may draw reasonable
inferences from basic facts to determine ultimate fact issues. Lacour v. State, 8 S.W.3d 670,
671 (Tex. Crim. App. 2000). 

 The record does not demonstrate that the expert testimony supporting the verdict was
without probative value. Reviewing the record in the light most favorable to the jury's
verdict, we conclude a rational jury could have found beyond a reasonable doubt that Brooks
suffers from a behavioral abnormality that predisposes him to commit future acts of sexual
violence. We overrule issue one.

 In issue two, Brooks argues the trial court erred by failing to include the requested jury
question requiring the jury to find that he has an issue with volitional control. We have
considered and rejected this issue in previous cases. See In re Commitment of Almaguer, 117
S.W.3d 500, 505-06 (Tex. App.--Beaumont 2003, pet. denied); see also In re Commitment
of Petersimes, 122 S.W.3d 370, 372 (Tex. App.--Beaumont 2003, pet. denied); In re
Commitment of Adams, 122 S.W.3d 451, 452-53 (Tex. App.--Beaumont 2003, no pet.). 
When a statute governs a case, the jury charge should track the language of the statutory
provision as closely as possible. In re Commitment of Almaguer, 117 S.W.3d at 502-03. The
jury charge here did so. Although Brooks invites us to reconsider our prior holdings, we
decline to do so. The requested question would merely have emphasized one aspect of the
case already implicit in the statutory definition and broad-form question. See In re
Commitment of Riojas, 220 S.W.3d 195, 196 (Tex. App.--Beaumont 2007, no pet.) (citing
In re Commitment of Almaguer, 117 S.W.3d at 505-06). Issue two is overruled. 

 The judgment is affirmed. 

 AFFIRMED. 

 _________________________________

 DAVID GAULTNEY

 Justice 

 

Submitted on July 7, 2009

Opinion Delivered July 30, 2009 


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Proctor indicated the alcohol abuse was in full remission in a controlled environment,
because Brooks had been in prison and there was no information Brooks had alcohol in
prison.