**Affirmed and Majority and Concurring Opinions filed September 12, 2013.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-12-00264-CV

**WILLIAM M. BISHOP AND PINNACLE POTASH INTERNATIONAL, LTD., Appellants**

**V.**

**E. BARGER MILLER, III AND REUNION POTASH COMPANY, Appellees**

## NO. 14-12-00318-CV

**REUNION POTASH COMPANY, Appellant**

**V.**

**WILLIAM M. BISHOP AND PINNACLE POTASH INTERNATIONAL, LTD., Appellees**

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-29234**

## C O N C U R R I N G   O P I N I O N

Although I join in the judgment and in the majority's analysis of most of the

issues presented, I write separately because I would conclude that Reunion failed to preserve some of its complaints concerning the legal sufficiency of the evidence supporting the damages finding.

Reunion asserts that a jury cannot determine the amount of a reasonable royalty without an expert opinion on the matter, and that the only expert opinion on this subject was that of James Woods. Reunion argues that Woods's opinion was unreliable, and thus, there is no evidence of a reasonable royalty.

In determining whether Reunion's appellate arguments about the reliability of Woods's opinion were preserved for review, we are guided by *Coastal Transport Co. v. Crown Central Petroleum Corp.*, 136 S.W.3d 227 (Tex. 2004). In *Coastal*, the court stated:

> When the expert's underlying methodology is challenged, the court "necessarily looks beyond what the expert said" to evaluate the reliability of the expert's opinion. When the testimony is challenged as conclusory or speculative and therefore non-probative on its face, however, there is no need to go beyond the face of the record to test its reliability. We therefore conclude that when a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis. However, when the challenge is restricted to the face of the record . . . for example, when expert testimony is speculative or conclusory on its face . . . then a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility.

*Id.* at 233 (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706 712 (Tex. 1997)).

Reunion does not contend that Woods's opinion was speculative or conclusory on its face.[1] Instead, Reunion raises three complaints about Woods's

_____

[1] In its appellate reply brief, Reunion argued that *Miller's* financial projections were

2

methodology.

First, Reunion argues that Woods's opinion concerning the total amount of damages caused by misappropriation of trade secrets is unreliable because Woods did not identify the amount of damages caused by the misappropriation of each individual trade secret. Because this complaint about Woods's methodology was not preserved in the trial court, it is not subject to appellate review. *See* TEX. R. APP. P. 33.1(a).

Second, Reunion argues that Woods's opinion is unreliable because he only considered a hypothetical negotiation between Bishop and Miller and not between Bishop and Reunion. Reunion also failed to preserve this methodology complaint in the trial court, and thus, the complaint is not subject to appellate review.

Third, Reunion argues that Woods's opinion is unreliable because it rests entirely on Miller's projections, without showing a potential for financing, and without considering the downsides of the venture such as unforeseen market conditions or the risk that the trade secret would not work. This also is a complaint about Woods's methodology, but because these arguments were addressed in detail both in Bishop's response to Reunion's motion to exclude Woods's testimony and in Reunion's reply in support of the motion, I will assume for the purpose of this

---

speculative, and thus, Woods's reliance on those figures caused Woods's opinion to be speculative as well. In support of this argument, Reunion relied on an unpublished case from a federal court. *See Carbo Ceramics, Inc. v. Keefe*, 166 Fed. Appx. 714, 724 (not designated for publication) (holding that plaintiff's expert's opinion was inherently speculative because it was based on defendant's speculative evidence of projected revenues). In that case, the court did not purport to address error-preservation rules that apply in Texas state courts. This court is required to follow *Coastal Transport Co.*, and because the argument that Woods's reliance on speculative data renders his own opinion "inherently speculative" would require the court to evaluate the foundational data on which Woods relied, it is a complaint about methodology, and such a complaint must be preserved in the trial court by a timely objection. *See Coastal Transport Co.*, 136 S.W.3d at 233. *See also Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (per curiam) ("Texas courts . . . are *obligated* to follow only higher Texas courts and the United States Supreme Court.").

appeal that those arguments were preserved for review.[2]

While these arguments might have had more force if the jury had awarded the full $49 million dollars, the jury awarded less than 3.5% of that amount. Neither party to this appeal has explained how the jury arrived at $1,696,428.55 in damages, and no explanation is apparent from the record. Reunion, however, does not challenge sufficiency of the evidence of the *amount* of damages; it challenges the legal sufficiency of the evidence of the *existence* of damages. And in evaluating a complaint that there is no evidence to support a finding, we cannot limit our review to the evidence that is challenged on appeal, but instead must consider all of the evidence in the record—including evidence offered by the complaining party. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) ("Nor can evidence supporting a verdict be identified by which party offered it . . . . As a practical matter, a court cannot begin to say what evidence supports a verdict without reviewing it all.").

A reviewing court evaluates the sufficiency of the evidence in light of the jury charge. *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) (per curiam). Here, the jury was instructed to consider factors that included

> the resulting and foreseeable changes in the parties' competitive
> posture; the prices past purchasers or licensees may have paid; the

---

[2] Unlike a motion in limine which preserves nothing for review, a motion to exclude testimony can preserve a complaint about the admission of evidence. *See Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 91 (Tex. App.—Houston [14th Dist.] 2004, no pet.). *See* TEX. R. EVID. 103(a)(1) (specifying that error in the admission of evidence is not preserved unless "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context"). Although Reunion complains on appeal of the sufficiency of the expert-opinion evidence rather than on its admission, Reunion relies on many of the same arguments made in connection with the motion to exclude the evidence to be offered through Woods. Reunion stated in its primary brief that the clerk of the trial court had been asked to supplement the record with a copy of the motion, and although no such supplement has been received, further requests would only delay the resolution of this appeal without altering its disposition.

total value of the confidential information to Bishop, including the development costs and the importance of the confidential information to Bishop's business; the nature and extent of the use intended for the confidential information; and the availability of alternative sources for the information.

Contrary to Reunion's assumption, the evidence relevant to these factors was not limited to Woods's opinion.

The jury heard that Bishop spent years working on the development of his trade secrets. Evidence also was presented that Miller sold Reunion Potash (with Bishop's trade secrets) to Allied Crude at a profit of $1 million. Schwabauer testified that he considered this to be evidence of value. The jury also heard evidence that Miller was in financial trouble and was desperate for a sale. From this evidence, the jury reasonably could infer that this was a factor in determining the $1.25 million sales price, and that the company might have been sold for a higher price if Miller had not been in financial difficulty. There also was evidence that Miller also found an investor interested in purchasing a 65% ownership interest for $5 million plus a capital investment. The jury additionally heard that Reunion Potash spent $10 million acquiring information about the leases and potential potash development before Allied purchased the company, and that the size of this expenditure was important to Allied's decision to purchase. Allied then spent $250,000 in development costs on the project. Although the addition of this amount to the purchase price of $1.25 million brings Allied's investment to $1.5 million, the jury also heard evidence that Allied would not sell Reunion for $1.5 million; thus, the jury reasonably could infer that Allied knew that Reunion was worth more than the price that Allied paid for it. The jury additionally had before it evidence of potential financing for the venture from both Miller and Bishop; evidence of the viability of the trade secrets; and the testimony of Reunion's own

5

expert, Schwabauer, that a discount rate of 50–80% would be necessary to account for risk such as unforeseen market conditions, resulting in a $15 million value. Schwabauer also argued that the value of the venture had to be reduced by 35% to account for taxes. Although Schwabauer testified that Miller's projections had to be taken "with a grain of salt" and were "just a starting point," he agreed that the projections could be used to attract investors. The jury knew that based on the strength of these projections, a bank had loaned $500,000 to Miller to obtain the leases. The jury knew that Allied had these projections when it bought Reunion, although Gray testified that he did not put "much stock" in them. And, as Reunion points out, the jury heard expert-opinion testimony based in part on projections of future revenue. *See Sw. Energy Production Co. v. Berry-Helfand*, No. 12-11-00370-CV, 2013 WL 3461644, at \*26–29 (Tex. App.—Tyler July 10, 2013, no pet. h.) (affirming "reasonable royalty" damage award for misappropriation of trade secret in which projected revenues were part of the expert's calculation).

I would conclude that there is more than a scintilla of evidence of the factors that the jury was instructed to consider. Reunion claims only that there is *no* evidence of damages, but because there is legally sufficient evidence that Bishop's trade secrets had financial value and could have been sold or licensed for a reasonable royalty, I would overrule this point of error without considering additional complaints about Woods's methodology that were not preserved in the trial court.


/s/    Tracy Christopher
       Justice


Panel consists of Justices Christopher, Jamison, and McCally (Jamison, J., majority).