**Affirmed and Memorandum Opinion filed March 30, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00575-CV

---

## IN RE: THE COMMITMENT OF ROBERT ALLEN THROM

---

**On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1404574Z**

---

## MEMORANDUM OPINION

The State filed a civil petition to commit appellant Robert Allen Throm for involuntary treatment and supervision as a sexually violent predator. Tex. Health & Safety Code Ann. §§ 841.001–.151. The jury found that appellant is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. Appellant appeals, raising four issues. We affirm.

### BACKGROUND

In 1999, the Legislature enacted the Civil Commitment of Sexually Violent Predators Act (the "Act"), which provides for the civil commitment of sexually

violent predators based on legislative findings that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." Tex. Health & Safety Code Ann. § 841.001. The Legislature found it was in the interest of the State to provide a civil commitment procedure for the long-term supervision and treatment of sexually violent predators. *Id.* Under the Act, a person is a sexually violent predator if the person "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a).

It is undisputed that appellant has been convicted of two sexually violent offenses. The first conviction occurred in 1986, the second in 2014. The 1986 conviction involved appellant sexually assaulting a five-year-old boy in a restaurant bathroom. The 2014 conviction occurred after appellant sexually assaulted his common-law wife's six-year-old grandson. As a result of this undisputed evidence, the focus of appellant's trial was on the Act's second element: did appellant suffer from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. § 841.002(2) (defining "behavioral abnormality" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person."). Four witnesses testified during appellant's trial: (1) forensic psychologist Darrel Turner, (2) psychiatrist Dr. Sheri Gaines, (3) Maxine Westmoreland, a licensed professional counselor, and (4) appellant.

2

Darrel Turner has a doctorate degree in clinical psychology and his practice focuses, in part, on forensic psychology. Turner explained that forensic psychology entails applying "knowledge of psychology and clinical psychology in the courtroom to answer a legal question." Turner continued that he was retained to provide his "opinion regarding whether or not [appellant] suffers from a behavioral abnormality that predisposes him to engage in predatory acts of sexual violence."

After lengthy testimony detailing his training and experience, Turner explained that he became involved in appellant's case because he had contracted with the Texas Department of Criminal Justice to perform initial behavioral abnormality evaluations on inmates. Turner examined appellant and determined appellant suffers from a behavioral abnormality. According to Turner, "behavioral abnormality" is a legal term that is defined "as a congenital or acquired condition that by affecting a person's emotional or volitional capacity predisposes that person to engage in a sexually violent act such that they become a threat to the health and safety of other people." He was then retained by the State to prepare an opinion regarding appellant for the subsequent commitment trial.

Gaines is a medical doctor specializing in psychiatry. Gaines worked as a prison psychiatrist for several years. She primarily has a private practice seeing patients, but she also works for the State in cases such as appellant's, on a contract basis. The latter part of her practice is forensic psychiatry, which is psychiatry dealing with the legal system. Forensic psychiatry focuses on abnormal or problematic behaviors. Gaines defined "behavioral abnormality" in the same way as Turner.

Turner testified regarding the methodology he used in preparing his opinion on appellant. Turner began by reviewing a packet of appellant's records sent by

3

the State. These records related to appellant's criminal history, his sexual offenses, victim statements, depositions, police reports, court records, and prison records. Turner also reviewed Gaines' deposition taken in this case. Turner also conducted a face-to-face evaluation of appellant, and then scored various psychological instruments. The psychological instruments included the PCL-R or Psychopathy Checklist Revised, and the Static-99R, an actuarial instrument. The methods and instruments Turner used are routinely used by other forensic psychologists.

Gaines explained the methodology that she used to prepare her opinion regarding appellant. She also reviewed records that had been sent by the State. These included many, if not all, of the records reviewed by Turner. Gaines also reviewed Turner's report and deposition, appellant's deposition, and several other depositions. Finally, Gaines met face-to-face with appellant for about three hours. According to Gaines, her methodology used in this case is the same as the methodology used by other psychiatrists in similar cases. Gaines explained that she did not score any instruments regarding appellant because those are tools normally used by psychologists, not psychiatrists.

Both Turner and Gaines diagnosed appellant with a pedophilic disorder nonexclusive type, attracted to males. According to both experts, this means appellant is sexually interested in both prepubescent males[1] and adult females. According to both experts, pedophilic disorder is a chronic or lifelong condition that cannot be turned on or off at will; it is a condition that does not go away. The goal of treatment is not a cure, which does not exist, but instead teaching the person with pedophilic disorder methods to control those deviant thoughts and urges so they are not acted upon. According to Turner, appellant's pedophilic disorder is a condition that affects his emotional or volitional capacity, and is part

---

[1] Prepubescent is generally considered a child under the age of 13.

4

of his behavioral abnormality. Turner also testified that appellant has serious difficulty controlling his sexual behavior.

Both Turner and Gaines also diagnosed appellant with an antisocial personality disorder, which Turner explained as a willingness to victimize other people. This is also a chronic, lifelong condition.

Both experts opined that appellant suffered from a behavioral abnormality as defined in the Civil Commitment of Sexually Violent Predators statute. *See* Tex. Health & Safety Code Ann. § 841.002(2). According to Gaines, her diagnosis was based on the risk factors appellant has demonstrated over time. In Gaines' opinion, the most important risk factors in making this determination are deviant sex and antisocial behavior, and appellant suffers from both. As a result, Gaines concluded appellant suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. Turner explained that appellant

> has pedophilic disorder which is a sexual attraction to prepubescent male children in this case. He also has enough antisocial personality traits that act as a sort of fuel, if you will, that allow him to feel comfortable finding victims and victimizing those children sexually. So, when we see those two existing in tandem, the sexually deviant interest and the willingness to act on it and victimize others, as we see with [appellant] from 1986 all the way until 2012, across that amount of time, we still see that willingness to commit these acts of sexual victimization. And it's when those two factors exist in tandem that we are looking exactly at the definition of a behavioral abnormality. Problems controlling behavior that make you likely to engage in sexually violent acts.

The jury viewed the video deposition of Maxine Westmoreland, appellant's sex offender treatment provider in prison, and it heard excerpts of that deposition read in court. Westmoreland works in the Texas prison system as a mental health therapist.

5

Westmoreland testified that appellant attended her sex offender treatment program during his incarceration for his second sexual assault conviction. The program has nothing to do with legal behavioral abnormalities. The program lasted nine months. Westmoreland explained that the program began with four months of education, which was followed by five months of group and individual therapy. According to Westmoreland, appellant completed the program.

Westmoreland diagnosed appellant with borderline personality disorder. The program was aimed at working on appellant's self-esteem issues and deviant fantasies regarding children. According to Westmoreland, the program focused only on appellant's second sexual assault offense. Westmoreland testified that appellant admitted deviant fantasies toward his second victim. Also, according to Westmoreland, appellant was experiencing deviant sexual fantasies while participating in her class. Westmoreland did not diagnose appellant with pedophilia during the program because she saw no need to make the diagnosis.

Westmoreland also testified that it is impossible to tell whether appellant could apply what he learned in the treatment program to himself. According to Westmoreland, while appellant did express remorse about his crimes during the program, it is impossible for her to tell if that remorse was genuine. According to Westmoreland, even though appellant has completed the prison program, he is still at risk of reoffending. Westmoreland testified appellant needs to continue working on identifying his (1) high-risk situations and places, (2) deviant fantasies, (3) triggers, (4) thoughts, and (5) coping skills. Westmoreland further testified that she always suggests that inmates who complete her sex offender treatment program should receive further supervision and treatment. Westmoreland admitted that the program does not cure anyone. Finally, it was Westmoreland's expectation that appellant would connect with another therapist and continue working on learning

6

not to reoffend based on what he had learned during her sex offender treatment program.

Appellant was the last witness to testify. At the time of trial, appellant was still in prison on his second sexual assault conviction. At the time of his trial, appellant had served over five years for sexually assaulting his common-law wife's grandson. Appellant admitted that he also had a previous conviction for sexual assault of another child.

Appellant recounted his life and his numerous trips to prison for various offenses, including failing to register as a sex offender and aggravated assault. Appellant also described meeting the woman who would become his common-law wife. Before they moved in together, appellant told her about his conviction for the first sexual offense. But, appellant told her that the boy mistakenly identified him as the perpetrator. For the next eight years, appellant was involved in that relationship, held a job, purchased a home, and did not commit any crimes.

Then, in 2012, his wife's grandson came to visit. Appellant testified that it had not occurred to him that he should not be around the boy, despite the fact that he continued to have sexual fantasies about boys. As soon as the boy arrived, appellant's sexual fantasies surfaced. The fantasies quickly got to the point that appellant could not control them and he sexually assaulted the boy while his wife was in the shower.

Appellant admitted that he now knows he has an attraction to young boys. He also admitted that his fantasies about young boys currently exist and that he considers himself a pedophile. Appellant testified that he considers his prison sex offender treatment program to be a first step, but admits that he still has a lot to learn. According to appellant, before his sex offender treatment program taught by Westmoreland, he had always just pushed his offenses out of his head and had "no

thought about the victim." Appellant admitted that he needed continued sex offender treatment and that he cannot control his sexual deviance on his own. Appellant testified that even though his sexual assaults on children span a twenty-five year time period, he has only started being honest with himself and others about what he had done to his victims in the last year. Finally, appellant admitted he has a lot more work to do in treatment, there is always a chance he will reoffend, and that ongoing education and therapy is the best way to prevent reoffending.

At the conclusion of the evidence the case was submitted to the jury and it found appellant is a sexually violent predator. The trial court rendered a final judgment and an order of civil commitment based on the jury's verdict. Appellant filed a motion for new trial, arguing, among other things, that the evidence was legally and factually insufficient. The motion was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). This appeal followed.

## ANALYSIS

I.  **Sufficient evidence supports the jury's determination that appellant suffers from a behavioral abnormality.**

Appellant argues in his first and third issues that the evidence is legally and factually insufficient to support the jury's finding beyond a reasonable doubt that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. In his second issue, appellant challenges the opinions of the State's expert witnesses as conclusory and constituting no evidence. We address these issues together.

A.  **Standard of review and applicable law**

The commitment of a person as a sexually violent predator is a civil proceeding. *In re Commitment of Fisher*, 164 S.W.3d 637, 645–53 (Tex. 2005).

8

The Act requires the State to prove beyond a reasonable doubt that a person is a sexually violent predator.[2] *In re Commitment of Harris*, 541 S.W.3d 322, 327 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt the elements required for commitment. *Id.* We may not, however, ignore "undisputed facts that do not support the finding." *In re Commitment of Stoddard*, No. 19-0561, 2020 WL 7413723, at *7 (Tex. Dec. 18, 2020). The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *In re Commitment of Harris*, 541 S.W.3d at 327. We presume the jury resolved disputed facts in favor of the finding if a reasonable factfinder could do so. *In re Commitment of Stoddard*, 2020 WL 7413723, at *7.

The Act requires evidence of both repeat past sexually violent behavior and a present condition that creates a likelihood of such conduct in the future. *Id.* at *9. A factual-sufficiency review must focus on those actual requirements. *Id.* The appellate standard governing a factual-sufficiency review of a finding that a person is a sexually violent predator is whether, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met. *Id.* Further, in reversing for factual insufficiency, the appellate court must detail why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding. *Id.*

An expert witness may testify regarding scientific, technical, or other specialized matters if the expert is qualified, his or her opinions are relevant, the

---

[2] *See* Tex. Health & Safety Code Ann. § 841.062(a).

opinion is reliable, and the opinion is based on a reliable foundation. *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009). No objection to the admission of an expert's opinion is required when the expert's testimony is conclusory and lacks probative value as a result. *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004). A conclusory statement is one that expresses a factual inference without providing underlying facts to support that conclusion. *Padilla v. Metro. Transit Auth. of Harris Cnty.*, 497 S.W.3d 78, 85 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Conclusory testimony cannot support a judgment because it is considered no evidence. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, L.L.C.*, 572 S.W.3d 213, 222 (Tex. 2019). An expert's testimony is conclusory when the expert asserts a conclusion with no basis. *Id.* at 223. The expert must link his conclusions to the facts, explaining the basis of his assertions. *Id.* Additionally, an expert's experience alone may be a sufficient basis for expert testimony. *Id.* at 227. But asking the jury to take the expert's word for it because of his status as an expert will not suffice. *Id.* at 223. Thus, a judgment may not be supported by conclusory expert testimony even if a party did not object to admission of such testimony. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). This principle applies when the expert offers no basis for his opinion or the basis offered by the expert provides no support. *Id.* at 818. The supreme court has made it clear that "a claim will not stand or fall on the mere ipse dixit of a credentialed witness." *Id.*

## B. The evidence is legally sufficient.

Appellant makes a two-pronged argument that the evidence is legally insufficient to support the jury's finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. First, appellant argues that the evidence is legally insufficient because it "establishes nothing more

10

than that [he] is just a potentially dangerous but typical recidivist who should be dealt with exclusively through the criminal justice system and not one of those very few most dangerous sex offenders who have serious difficulty controlling their behavior." Second, appellant argues that the opinions of the State's two experts, Turner and Gaines, have no probative value because they are conclusory due to a lack of an adequate foundation. We disagree with both of appellant's arguments.

We turn first to appellant's arguments that the experts' opinions have no probative value because they lack foundation and are conclusory. Here, as summarized above, each expert explained their education and experience. They also described the documents and other materials they reviewed and the methodologies, which are used by other, similar experts in this field, that they used in performing their evaluation of appellant. This included each expert meeting individually with appellant. They then explained how they arrived at their respective conclusions. This included both experts explaining how they determined that appellant suffered from sexual deviancy and antisocial personality disorder, the significance of those determinations, and why those findings led to their opinions that appellant suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. The two experts did not simply opine appellant suffers from a behavioral abnormality and is therefore likely to engage in predatory acts of sexual violence. We hold that both experts laid an adequate foundation for their opinions and they were not conclusory. *See Warner Bros. Entertainment, Inc. v. Jones*, 538 S.W.3d 781, 817 (Tex. App.—Austin 2017) *aff'd*, 611 S.W.3d 1 (Tex. 2020) (concluding expert laid reliable foundation for opinion); *Padilla*, 497 S.W.3d at 86 (addressing allegation that affidavit was conclusory in inverse condemnation suit). We overrule appellant's

11

second issue.

We turn next to appellant's contention that the evidence is legally insufficient. Here, appellant points out (1) that he was "able to control himself from committing sexually violent offenses for 99.9997% of his free-world life between 2004 and 2012;" (2) neither expert determined he was a psychopath; (3) his score on one of the instruments used by Turner scored him a "5", which is significantly below "12," the highest score for sexual offending on that instrument; and (4) he had not engaged in any general rule-breaking between his 2004 release from prison and his 2012 sexual assault and also during his current prison incarceration. In appellant's view, the collective effect of this evidence renders the evidence legally insufficient to support the jury's finding.

The jury heard the experts testify. The experts took into account each item appellant points out and explained why they still came to the conclusion that appellant suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. For example, Turner explained that while he did not find appellant was a psychopath, he did determine that appellant suffers from an antisocial personality disorder, which Turner described as a willingness to victimize other people. Turner further explained it is appellant's willingness to victimize other people combined with his pedophilia that means appellant exactly meets the definition of behavioral abnormality. Turner and Gaines also addressed the gap between appellant's sexual assaults and his non-rulebreaking between 2004 and 2012. Far from demonstrating appellant did not have a behavioral abnormality, it instead offered further support for their conclusion because committing a sexual assault after being punished for a similar offense is one of the biggest factors in reoffending. Also, the fact appellant committed sexual assaults against children across a substantial time period indicated an escalation of

12

appellant's sexual deviance and that he was not changing as a result of aging. Both experts recognized that appellant had not committed serious infractions of the rules during his second sexual assault imprisonment and took that fact into account in reaching their opinion that appellant suffers from a behavioral abnormality. As Gaines explained, pedophiles "typically do well in prison with very few disciplinaries." According to Gaines, the same is true regarding persons with antisocial personality disorder, they tend to not break rules in a structured setting like prison.

The jury also heard appellant testify. Appellant admitted that he needed continued sex offender treatment and that he cannot control his sexual deviance on his own. Appellant also admitted that he has a lot more work to do in treatment, that there is always a chance he will reoffend, and that ongoing education and therapy is the best way to prevent that. We conclude the evidence is legally sufficient to support the jury's verdict. We overrule appellant's first issue.

### C. The evidence is factually sufficient.

Appellant argues that the evidence is factually insufficient because, in his view, it does not support a finding that he is an "extremely dangerous" or "worst of the worst" sex offender. The Texas Supreme Court recently addressed, and rejected a very similar argument.[3] *See In re Commitment of Stoddard*, 2020 WL 7413723, at *8 ("This 'small but extremely dangerous group' language, contained in the Act's legislative findings, is not part of the statute's definition of 'sexually violent predator' and was not an element the jury was required to find."). We

---

[3] The State argues in response to appellant's factual sufficiency challenge that we should adopt the Court of Criminal Appeals' rule first announced in *Brooks v. State* that the factual sufficiency standard of review is the same as the legal sufficiency standard of the review. 323 S.W.3d 893 (Tex. Crim. App. 2010). The Texas Supreme Court rejected that same argument in *In re Commitment of Stoddard*. 2020 WL 7413723, at *7. We must follow this precedent.

therefore reject appellant's invitation to import this language into the statutory definition of "sexually violent predator." To the extent appellant argues that the same evidence he asserted renders the evidence legally insufficient also makes the evidence factually insufficient, we disagree. The Act requires evidence of both repeat past sexually violent behavior and a present condition that creates a likelihood of such conduct in the future. *Id.* at \*9. Focusing on those requirements, we conclude that the disputed evidence that a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict, is not so significant that the jury could not have found beyond a reasonable doubt that the statutory elements were met. *Id.* We overrule appellant's third issue.

## II.     Any error in the jury charge was harmless.

In his fourth issue, appellant argues that the trial court erred when it refused to submit his requested charge instruction that the jury could render a verdict in his favor by a 10-2 vote.[4] The Texas Supreme Court has also recently resolved this issue. It held that while "a unanimous verdict is required to find that a defendant is an SVP, . . . only ten votes are necessary to reach a verdict for the defendant declining to find that the defendant is an SVP." *In re Commitment of Jones*, 602 S.W.3d 908, 913 (Tex. 2020). It then went on to hold that the trial court's failure to include an instruction to that effect in the charge was harmless error. *Id.* at 914–15. The court explained that,

_____

[4] Appellant's requested instruction provides:

Answer "yes" or "no" to the question. A "yes" answer must be based on a belief beyond a reasonable doubt. If you do not find beyond a reasonable doubt that the evidence supports a "yes" answer, then the answer is "no." If answering "yes," your verdict must be unanimous, and all twelve jurors must agree on that answer. If answering "no," unanimity is not required, but your verdict must be supported by the votes of at least ten jurors.

for the purpose of this harm analysis, we must presume that the jurors voted the way they did because they were conscientiously convinced of the result they reached. Because the members of the jury unanimously came to the conclusion that Jones is an SVP, an instruction explaining that a vote of ten jurors was sufficient for a verdict declining to find that Jones is an SVP would not have changed the outcome of this case.

*Id.* at 915. We are presented with the same situation here. We conclude that any error the trial court may have committed when it refused to include appellant's proposed instruction in the charge was harmless because the jurors found that appellant was a sexually violent predator by a unanimous vote. We overrule appellant's fourth issue.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.

/s/    Jerry Zimmerer
Justice

Panel consists of Chief Justice Christopher and Justices Jewell and Zimmerer.

15