# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00482-CV

**River City Drywall, LLC, Appellant**

**v.**

**Eric Hanlon and Nalinh Hanlon, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. D-1-GN-15-002089, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

River City Drywall, LLC, (River City) appeals the trial court's final judgment rendered after a jury found in favor of appellees Eric and Nalinh Hanlon on their construction-defect claims. The Hanlons hired River City to install drywall and drywall texture in the new home they were building and ultimately sued River City as well as their painter and, later, the manufacturer of the texture product due to problems with paint peeling off the walls in their home. River City contends that the evidence is legally and factually insufficient to support the jury's answers to questions about proximate causation, breach of warranty, damages, and attorney's fees. For the following reasons, we will reverse the trial court's judgment and render judgment that the Hanlons take nothing on their claims.

**BACKGROUND**[1]

The Hanlons served in the role of general contractor in the construction of their new home (the Residence) in Austin. They entered into a contract with River City to install the Residence's drywall and to apply decorative texture to the drywall. They hired another contractor, Nicolas Guerrero, to paint the interior walls after River City finished its drywall and texture work.

At some point after the walls were painted, the Hanlons discovered that when blue painter's tape is applied to some of the walls and then removed, some of the paint peels off along with the tape. The Hanlons filed a lawsuit against River City and Guererro and later added the manufacturer of the texture product, Murco Wall Products, Inc. (Murco), as a defendant for the damages they allegedly suffered in the form of the peeling paint. The Hanlons asserted causes of action against the defendants for breach of contract, breach of warranty, violations of the Deceptive Trade Practices Act (DTPA), negligence, and fraud.

The case was tried to a jury,[2] after which the jury returned a verdict in favor of the Hanlons, finding that River City breached its contract with them; knowingly engaged in a false, misleading, or deceptive act or practice on which the Hanlons relied to their detriment; failed to comply with a warranty; and committed a negligent act or omission. The jury additionally found that River City's conduct, under each of the Hanlons' theories, was the proximate cause of the

[1] Because the parties are familiar with the facts of the case and its procedural history, we include only a brief summary of the relevant and undisputed facts here and will reference the evidence adduced at trial in the discussion section of this opinion only to the extent necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

[2] Shortly before trial, Guerrero and Murco each settled with the Hanlons.

2

Hanlons' damages, in the amount of $267,160.[3]  The jury also found that the Hanlons incurred

$222,079 in reasonable attorney's fees.  The trial court rendered judgment in favor of the Hanlons

on their breach-of-warranty claim, awarding them actual damages and attorney's fees in the

amounts found by the jury.  The judgment also awarded River City a settlement credit in the amount

of $100,000, which "is the settlement amount received by Plaintiffs less the amount of attorneys'

fees that were segregated by Plaintiff at trial for the settling party."

**DISCUSSION**

River City raises four issues on appeal, contending that the evidence is (a) legally

and factually insufficient to support the jury's answers to questions about (1) proximate causation,

(2) breach of warranty, and (3) damages and (b) factually insufficient to support the jury's answers

to questions about attorney's fees.  Specifically with respect to causation, River City contends that

none of the Hanlons' expert witnesses were qualified to testify about the drywall or drywall texture

and their purported defective installation as the proximate cause of the "peeling-paint problem"

and that their testimony was, therefore, unreliable.  *See Broders v. Heise*, 924 S.W.2d 148, 152 (Tex.

1996) (noting that proponent of expert testimony has burden to show that expert possesses "special

knowledge as to the very matter on which he proposes to give an opinion" (citation omitted)).  River

City makes similar arguments with respect to its issue concerning breach of warranty, asserting that

the Hanlons' experts were "incapable of judging River City's installation of the drywall texture"

---

[3] The Hanlons' damages expert, David B. Kettler, supported his $222,344 repair estimate by explaining that all of the drywall would need to be removed and replaced, retextured, and repainted and that merely retexturing the "problem areas" would not address the painted areas that are likely to peel off in the future.

3

and did not testify that River City "in any way failed to install or apply drywall texture in a good and workmanlike manner." River City continues with its assertions of unreliable expert-witness testimony in raising its third issue about the evidentiary sufficiency to support the jury's award of damages. With respect to its complaint about attorney's fees, River City contends that the Hanlons' attorney who testified on the issue did not properly segregate his firm's fees for work on the case as it related to pursuing the Hanlons' claims against each of the defendants.

***Standards of review***

The evidence is legally insufficient if: (1) there is a complete absence of evidence of a vital fact; (2) the law precludes consideration of the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810–11 (Tex. 2005). More than a scintilla of evidence exists if reasonable and fair-minded people can differ in their conclusions about its meaning. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). In determining whether a finding is supported by legally sufficient evidence, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 807. We indulge every reasonable inference that would support the finding. *Id.* at 822.

When reviewing a verdict for factual sufficiency, we consider and weigh all of the evidence, not just the evidence that supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). When a party challenges the factual sufficiency of the

4

evidence supporting a finding for which it did not have the burden of proof, we may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* at 407. We may not substitute our own judgment for that of the factfinder or pass upon the credibility of witnesses. *Id*.

**Proximate causation**

In its first issue, River City challenges the evidentiary sufficiency to support the jury's findings, under each of the Hanlons' asserted theories, that River City's acts or omissions were the cause in fact of the Hanlons' injury (i.e., the peeling-paint problem). *See Del Lago Partners v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010) (explaining proximate cause as having two elements—cause in fact and foreseeability—and noting that test for cause in fact is whether act or omission was "a substantial factor in causing the injury without which the harm would not have occurred"). A finding of cause in fact may be based on either direct or circumstantial evidence, but it cannot be supported by mere conjecture, guess, or speculation. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003).

Specifically, River City contends that the Hanlons "attempted to prove [proximate] causation *solely* through the testimony of witnesses who *admittedly* lacked expertise in drywall, drywall texture, drywall-texture application, or anything related with drywall or drywall texture, and whose opinions were unreliable because they were not the product of objective scientific methods." In other words, River City contends that because there was no competent expert testimony about whether any act or omission of River City was the proximate cause of the peeling-paint problem, we must reverse the judgment because the jury's causation findings could only, therefore, be based on

mere speculation. *See id.* at 727–28 ("[A]s we have frequently said, some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." (citations and internal quotations omitted)).

"Proof other than expert testimony will constitute some evidence of causation only when a layperson's general experience and common understanding would enable the layperson to determine from the evidence, with reasonable probability, the causal relationship between the event and the condition." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006). Whether expert testimony is necessary to prove a matter or theory is a question of law. *Id.* (citing *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89–90 (Tex. 2004)). We conclude that whether drywall texture has been properly applied and whether its alleged improper application here caused the peeling-paint problem are issues that are not within a layperson's general experience and common understanding; therefore, the Hanlons were required to prove those issues with expert testimony. After reviewing all of the evidence, we agree with River City that it is legally insufficient to support the jury's verdict that River City was the proximate cause of the Hanlons' damages. The evidentiary problems are two-fold: (1) none of the experts relied upon by the Hanlons were qualified to opine about whether River City did anything wrong in applying the drywall texture (and were not able to identify any wrongful act or omission), and (2) neither the experts' testimony nor any other evidence created anything more than a mere suspicion of a causal link between any act or omission of River City and the peeling-paint problem.

The Hanlons relied on the testimony of three experts to support their causation claims: Dwight G. Weldon, an expert in "paint and coating failure analysis" and author of the book, *Failure*

6

*Analysis of Paints and Coatings*; David B. Kettler, a "residential remodeling" expert who testified as to his recommended repair procedures and costs thereof; and Thane Katz, a paint "product quality" employee of Sherwin Williams—the manufacturer of the paint used in the Residence—who has been analyzing paint and doing "quality reporting" for the company for sixteen years. Significantly, the Hanlons did not call any drywall or drywall-texture experts to testify about proper texture application or the effects of improper texture application, and all three of the Hanlons' experts admitted that they are not experts on drywall texture or its application. Furthermore, each of the three experts additionally testified about their lack of qualifications to testify and opine about the issue of why texture might fail or why it allegedly did fail in this case—the "very matter" on which the experts purported to give ultimate opinions. *See Broders*, 924 S.W.2d at 152.

Specifically, Weldon testified that:

- He does not have the expertise to testify or opine about why drywall texture would "fail," except that he "can tell you in broad terms that if it fails, it's either because it was applied wrong or it was defective product."

- He is not an expert in the manufacturing of drywall texture or its chemical composition.

- He is not an expert in proper application of drywall texture to walls.

- He has never before been called as an expert to opine in a lawsuit that texture is defective because it pulled away from the wall with painter's tape.

- He is not an expert on adhesion properties of drywall texture and cannot point to any industry standard or peer-reviewed scientific journal that has measured the adhesive nature of drywall texture and determined what forces it should be able to withstand before it "fails."

- He is not familiar with the Drywall Finishing Council, a trade group.

7

Kettler similarly testified that:

•  He does not hold himself out as an expert on whether drywall texture is or is not defective.

•  The last time he himself did any work involving drywall texture or paint was in the early 1970's.

•  He has never before given expert opinion testimony on the adhesive or bonding quality or characteristics of drywall texture and has never been recognized by a court as an expert concerning the character, quality, or characteristics of drywall texture or its application.

Finally, Katz testified that:

•  He does not hold himself out as an expert regarding drywall-texture manufacture, composition, or formulas.

•  He has no experience in applying drywall texture.

•  He has never been retained by anyone in litigation to give opinions on whether or not drywall texture has been applied to drywall in a workmanlike manner.

•  He cannot identify any industry standard concerning cohesiveness of drywall texture, is not a chemist, and is not an expert regarding the "breaking point" of drywall texture.

It is evident from the record that all three of the Hanlons' experts admittedly lacked any special knowledge, training, or education regarding drywall or drywall texture, both generally and specifically about its proper application and the effects of its improper application. Furthermore, none of the witnesses were able to identify any particular act or omission on the part of River City that they considered improper, negligent, or substandard. The experts' ultimate conclusions on

8

causation also demonstrate their lack of qualifications to opine on that issue, as indicated by their explanations of the foundations on which their opinions were based.

Specifically, Weldon testified that he analyzed some peeled-paint samples that the Hanlons sent to him; he did not visit the Residence or collect any samples himself. He explained that when he analyzes paint to determine how it has failed to perform as it should, he attempts to determine in which "plane"—which layer of paint, primer, or other material—the "failure" has occurred. He concluded that the paint's failure to adhere to the wall in this case occurred within the texture "plane" rather than within one of the paint "planes," based on the fact that he found a small amount of texture material on the back of the peeled paint, which he confirmed by viewing the samples under a microscope and using "infrared spectroscopy."[4] He explained his conclusion thus: "Well, here [the failure i]s occurring in the texture coat, because there's texture coat on the back of the primer." Weldon explained that he did not measure the thickness of the texture material on the back of the peeled-paint samples because the texture material and the primer applied by Guerrero were both white in color and he could not see the "line of demarcation" between them; instead, he used an "X-Acto knife" to "shave off th[e] powdery texture coat" and estimated, based on his "35 years of doing this," that there "was a couple of mils of texture coat on the back" of the peeled-paint sample. He explained that a "mil" is "one one-thousandths of an inch" or "25 microns"—essentially, "the thickness of a piece of paper."

---

[4] Weldon explained to the jury that infrared spectroscopy is "basically an analytical technique where you shine a beam of infrared light either through a sample or bounce it off of the sample. And a sample will absorb infrared light at different frequencies, and that depends on the chemical composition of the sample. So you get—you can get quite a bit of information on the chemical composition of the samples. Some people call them fingerprints, infrared fingerprints."

9

However, Weldon's testimony about the "failure plane" and, especially, his ultimate conclusion that the texture "failed" do not explain for the jury *how* or *why* the texture allegedly failed—that is, whether its "failure" was due to its being a defective product,[5] improper application of the product, improper application of primer or paint by Guerrero,[6] improperly cleaned walls prior to painting,[7] or something else altogether. The fact that some small amount of texture product has come off the wall along with the paint that has peeled off simply does not prove—even circumstantially—that the texture was applied negligently or improperly.[8]

Essentially, Weldon's testimony about the texture's "failure" can be reduced thus: a small amount of the texture product came off the wall attached to the back of the paint that peeled off when painter's tape was pulled off the walls. But that fact does not amount to any more than a scintilla of evidence demonstrating proximate causation—i.e., that any act or omission of River City

---

[5] There was no evidence admitted relating to any analysis of the texture product itself and whether its manufacture and design complied with industry standards, even though Katz testified that "low-quality texture" is one of the three "main reasons" he has seen for why texture is "poorly cohesive." Similarly, Weldon testified that, "in broad terms," there are two causes for drywall texture "failure": improper application and a "defective product."

[6] There was evidence that Guerrero primed and painted the textured walls under humid conditions, which—according to some of the witnesses—increases the required drying time between primer and paint, and there were conflicts between Guerrero's deposition and trial testimony about how soon after priming the walls he began applying coats of paint. There was also testimony that hand-troweled texture, due to its thickness, needs to be "back-rolled" with primer after being primed with a sprayer and that Guerrero merely sprayed the primer on the walls without back-rolling them.

[7] There was evidence that, except for the cracked areas that River City repaired, the textured walls remained unpainted for about five months while construction continued, and Guerrero did not clean the walls before painting them except for the bottom portion of the walls near the trim.

[8] Katz testified that he has never seen a peeling-paint situation where the paint "peeled right off the top of the texture and none of the texture came with it."

was a substantial factor in causing the peeling-paint problem. Weldon's conclusion that the texture product "failed" solely because a small amount of it was on the back of the peeled-paint samples is simply too great an inferential leap to withstand legal-sufficiency review. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) ("Opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact 'more probable or less probable.'" (citing Tex. R. Evid. 401)). It is the basis of an expert witness's opinion—not the witness's qualifications or his bare opinions alone—that can settle an issue, because a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness. *Id.* (citing *Burrows v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999)). Weldon did not explain the basis of his conclusion that the texture "failed" except to say that it "failed" because some small amount of texture came off the wall along with the paint. Such a conclusory observation does not make the existence of any improper act or omission on the part of River City any more or less probable, and Weldon's testimony about causation, therefore, amounts to nothing more than mere speculation.

Furthermore, the jury would have had to make too great an inferential leap when concluding that the alleged texture "failure" was caused by any act or omission of River City, based on the evidence cited by the Hanlons:

- Testimony that River City applied primer to the bare drywall in the places where it applied an "orange peel" texture finish but did not apply primer to the bare drywall when applying a "hand trowel" texture finish.

- Testimony that the paint peels only in the "hand trowel" areas and not in the "orange peel" areas.

11

- Testimony that River City made repairs to certain portions of the "hand trowel" areas to fix cracks in the texture shortly before Guerrero painted the walls and that paint does not peel off of the repaired hand-trowel areas.

- Weldon's testimony that he analyzed a peeled-paint sample from an area of the hand-trowel wall that the Hanlons said had been repaired and found that the texture material in the repaired-sample contains gypsum and polyvinyl acetate resin (PVA), which the samples from the unrepaired hand-trowel areas did not contain. Weldon explained that gypsum and PVA "can be used in a wide range of material" and are often used in primers. Weldon concluded that there were only two possibilities to explain the difference between the repaired and non-repaired samples: either "the drywaller added something to the texture material that he applied in the repair area" or used a different texture product for the repaired areas.

- Testimony that certain hand-trowel areas that were never painted are "soft" and "powdery" to the touch and the testimony of River City's principal that hand-trowel texture "should be hard to the touch once dry."

For an issue that is outside the general experience and common understanding of a layperson, the above-cited circumstantial evidence is legally insufficient to support the jury's proximate-causation findings, especially in light of evidence in the record indicating other possible causes of the peeling paint and the failure of the Hanlons' experts to rule those out. For instance, Katz testified that there were at least three possible reasons for the peeling-paint problem at the Residence: (1) over-thinning of the drywall texture, (2) painting over the drywall texture before it adequately dried, and (3) low-quality texture that has a "low binder content." He was unable to confirm that any of the three possibilities actually occurred here or rule any of them out. Thus, Katz's testimony about causation is legally insufficient to support the jury's verdict. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997) ("[I]f there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding

12

those causes with reasonable certainty."); *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558–59 (Tex. 1995) (finding that failure of expert to rule out other causes of damage rendered his opinion little more than speculation).

Finally, Kettler testified that he formed his opinion that the texture is "defective" and needs to be replaced based merely on his review of the reports prepared by Weldon and Katz. He testified that he did not conduct any independent analysis of the texture or paint except to apply and remove painter's tape from the walls to confirm that the paint in fact peels off under such circumstances. Accordingly, Kettler's opinions about causation are not legally sufficient to support the jury's verdict either.

In sum, the evidence of proximate causation here—that is, the evidence showing that any act or omission of River City was a substantial factor in causing the peeling-paint problem, without which the harm would not have occurred—consists of nothing more than speculation and inferences that require too great a leap for reasonable minds to make. "[A]n inference stacked only on other inferences is not legally sufficient evidence." *Marathon Corp.*, 106 S.W.3d at 728. "[I]n cases with only slight circumstantial evidence, something else must be found in the record to corroborate the probability of the fact's existence or non-existence." *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001). That "something else" is absent here. *See Marathon Corp.*, 106 S.W.3d at 728 (holding that evidence of proximate causation was legally insufficient because circumstances could give rise to any number of inferences, none more probable than another).

We sustain River City's first issue in which it asserts that the evidence is legally insufficient to support the jury's answers to questions about proximate causation. Additionally,

13

because proximate causation was an element of each of the Hanlons' theories of liability, our determination of that issue requires us to render judgment in favor of River City. *See Southwest Key Program, Inc. v. Gil-Perez*, 81 S.W.3d 269, 270 (Tex. 2002) (reversing and rendering judgment that plaintiff take nothing on his claim after holding that evidence is legally insufficient to support proximate-cause element of each of plaintiff's theories of liability). We thus do not need to reach River City's additional issues about the evidentiary sufficiency supporting the jury's answers to questions about breach of warranty, damages, and attorney's fees.

## CONCLUSION

We reverse the trial court's judgment and render judgment that appellees take nothing on their claims.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Reversed and Rendered

Filed: August 28, 2018

14