COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | No. 08-22-00221-CV |
|---|---|---|
| IN RE COMMITMENT OF | § | Appeal from the |
| GEORGE DYER, | § | 147th District Court |
| Appellant. | § | of Travis County, Texas |
| | § | (TC# D-1-GN-20-007813) |

# **O P I N I O N**

## **BACKGROUND**

Appellant George Dyer was found to be a sexually violent predator and was civilly committed as such in accordance with the Texas Health and Safety Code.[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.003, 841.081. In two issues, Appellant challenges his civil commitment. We affirm.

### *Factual Background*

Before the filing of the petition to civilly commit Appellant, he was convicted and sentenced as follows:

---

[1] This case was transferred from our sister court in Travis County, Texas pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

- January 12, 1993, in the 33rd District Court of San Saba County, Texas, Sitting as a Juvenile Court, in Cause No. 191, for the offense of Delinquent Conduct, committed on or about November 29, 1992, December 4, 1992, and December 9, 1992, and sentenced to 1 year probation.

- October 27, 1994, in the 147th Judicial District Court of Travis County, Texas, in Cause No. 0943857, for the offense of Aggravated Sexual Assault of a Child, committed on or about May 26, 1994, and sentenced to 40 years' confinement in the Texas Department of Criminal Justice Institutional Division.

- October 27, 1994, in the 147th Judicial District Court of Travis County, Texas, in Cause No. 0945567, for the offense of Aggravated Sexual Assault of a Child, committed on or about June 1, 1994, and sentenced to 40 years' confinement in the Texas Department of Criminal Justice Institutional Division.

On December 31, 2020, a petition was filed to civilly commit Appellant as a sexually violent predator and a jury trial was thereafter held.

At trial, the State called two witnesses to testify: Dr. Antoinette McGarrahan and Appellant. Dr. McGarrahan is a psychologist who specializes in forensic psychology and neuropsychology. She has conducted around 450 behavioral abnormality evaluations and was retained by the Texas Department of Criminal Justice (TDCJ) to conduct a behavioral abnormality evaluation of Appellant. Dr. McGarrahan determined Appellant is a sexually violent predator.

In addition, the State offered the deposition transcript of Geralyn Ann Engman, which was admitted over Appellant's objections that the reading of the deposition to the jury was cumulative evidence, and Ms. Engman was not qualified as an expert. The trial court overruled the objections, qualified Ms. Engman as an expert, and the deposition transcript was read to the jury. Ms. Engman

is a licensed psychological associate and was retained by the Special Prosecution Unit to evaluate Appellant and recommend whether he suffers from a behavioral abnormality. Ms. Engman determined Appellant is a sexually violent predator.

### *Procedural Background*

The jury unanimously found, beyond a reasonable doubt, that Appellant is a sexually violent predator, and Appellant was civilly committed. Appellant filed a motion for new trial. This appeal followed.

## DISCUSSION

In Issue One, Appellant challenges the legal sufficiency of the evidence to support beyond a reasonable doubt that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. In Issue Two, Appellant argues the trial court abused its discretion in admitting the deposition transcript and allowing it to be read to the jury.

## LEGAL SUFFICIENCY

### *Standard of Review*

We review sexually violent predator civil commitment proceedings for legal sufficiency of the evidence using the appellate standard of review applied in criminal cases. *In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.). Under the Due Process Clause of the U.S. Constitution, the State is required to prove every element of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The critical inquiry in a legal sufficiency challenge is whether the evidence in the record could reasonably support a conviction of guilt beyond a reasonable doubt. *Id.* at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the legal sufficiency of the evidence, we must view all the evidence in the light most favorable to the verdict to determine whether any rational juror could have found the defendant guilty of the essential elements of the offense beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). A lack of direct evidence is not dispositive on the issue of the defendant's guilt; guilt may be established by circumstantial evidence alone. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). We measure the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State*, 303 S.W.3d 331, 333 (Tex. App.—El Paso 2009, no pet.) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct charge accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240. We bear in mind the trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume the factfinder resolved any conflicting inferences in favor of the verdict and we defer to that resolution. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014) (citing *Jackson*, 443 U.S. at 319). A reviewing court may not reevaluate the weight and credibility of the evidence or substitute its judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Our only task under this standard is to determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

Appellant claims he objected to the admissibility of Dr. McGarrahan's testimony both pre-trial and after the close of evidence; however, our review of the record shows no such objection.[2]

---

[2] Appellant provides the following record citation wherein he claims he objected to Dr. McGarrahan's testimony: "(3 R.R. 3-29, 265-267)." However, we find no such objection in the provided page range; moreover, pages 265-267 do not exist in the record. In any case, we have conducted a thorough review of the entire record and did not find an

Accordingly, we are tasked to disregard the testimony for the first time on appeal as part of the legal sufficiency review. *In re Commitment of King*, 657 S.W.3d 16, 27 (Tex. App.—El Paso 2022, pet. denied). We recognize "that bare, baseless opinions" cannot support a judgment even if no objection is made to their admission in evidence. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). As such, a challenge to an expert's conclusion that is conclusory or speculative may be made for the first time on appeal. *See Coastal Transportation Co., Inc. v. Crown Central Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004). However, when a non-conclusory scientific opinion is challenged as unreliable, a party must have objected at trial that the evidence is legally insufficient to support the judgment. *Pollock*, 284 S.W.3d at 816-17.

### *Applicable Law*

To establish Appellant as a sexually violent predator, the State had to prove he is a repeat sexually violent offender and has a "behavioral abnormality" that makes him "likely to engage in a predatory act of sexual violence." *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003(a). The State bears the burden to prove both elements beyond a reasonable doubt. *Id.* § 841.062(a). As to the first element, an offender is a repeat sexually violent predator if convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses. *Id.* § 841.003(b). Appellant does not challenge this element on appeal.

As to the second element, which Appellant does challenge on appeal, a behavioral abnormality is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.*

---

objection to either the admissibility of Dr. McGarrahan's testimony in general, or to her testimony itself being misleading, conclusory, speculative, or unreliable.

§ 841.002(2). A predatory act is defined as "an act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

*Analysis*

Appellant argues the evidence is legally insufficient to support his civil commitment because without the testimony of Dr. McGarrahan, no rational factfinder could have found, beyond a reasonable doubt, that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. According to Appellant, Dr. McGarrahan's testimony was misleading, conclusory, speculative, and thus, unreliable. More specifically, Appellant mainly argues Dr. McGarrahan unreliably applied principles and methodologies of forensic science because her opinion was not based on data that supports her conclusions. Because Appellant did not object to the reliability of Dr. McGarrahan's opinion at trial, "we restrict our review of a legal sufficiency challenge on this ground to determine only whether there is some basis to support the expert's opinion, such that the opinion at issue was not conclusory." *King*, 657 S.W.3d at 27. We find Dr. McGarrahan's opinion that Appellant has a behavioral abnormality was sufficiently supported and was not conclusory.

Dr. McGarrahan's resume was admitted into evidence, and she testified she relied on principles of forensic psychology in her evaluation of Appellant. Dr. McGarrahan defined behavioral abnormality and explained associated medical terms she used. She stated she has conducted around 450 behavioral abnormality evaluations over the course of her 20 years of experience. She then described her methodology of conducting behavioral abnormality evaluations. In conducting an evaluation, Dr. McGarrahan explained she receives a packet of records, reviews those records, then conducts an in-person evaluation of the individual. As part of that evaluation, she conducts a clinical interview and asks the individual about their social

6

background—where they grew up, whether they were abused, and their educational background. She also conducts a mental status examination, in which she asks psychiatric-specific questions about mental health conditions, while simultaneously making observations of the individual.

Regarding her evaluation of Appellant, Dr. McGarrahan stated she reviewed records, which included police reports of Appellant's sexual offenses and non-sexual offenses, judgments and sentences of Appellant's prior convictions, witness statements, TDCJ classification records and disciplinary history, medical history, and Ms. Engman's deposition. She explained this information is considered collateral information and is very critical because the individuals at issue in these types of evaluations may not be completely motivated to present an accurate image of themselves and she therefore must rely upon the facts and data within the records provided, which is objective information. Dr. McGarrahan interviewed Appellant for approximately three hours and she confirmed her evaluation of him was in accordance with her training and the accepted standards in the field of forensic psychology.

Dr. McGarrahan employed the Static 99R, a sexual risk forensic assessment, and the Hare, a psychopathy checklist. She explained that these provide information as to the level of risk, what risk factors are present, what protective factors are present, and how that corresponds to an individual's risk in the future, collectively referred to as "risk factors". According to Dr. McGarrahan, research has proven that risk factors, if present, raise an individual's risk to reengage in the future, which is why she utilizes risk factors in her assessment.

Dr. McGarrahan applied risk factors to Appellant in determining he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. When asked what top factors led to her conclusion, Dr. McGarrahan answered his sexual deviancy

and antisocial characteristics. She then went into the facts and details of Appellant's sexual offenses.

According to Appellant, the record shows that "much of Dr. McGarrahan's opinion was not based on statistical evidence scientifically supporting her recidivism opinion, but in fact distorted the available research." For example, Appellant maintains that when asked for the differences between Appellant and other inmates who, like Appellant, had committed sexual offenses at a young age and remained in prison for decades, Dr. McGarrahan responded:

> Those other individuals matured, they developed insight, they developed remorse, they took many classes to prepare them for job skills back in the free world, they held numerous jobs and were stable within the prison system, they received treatment and understood victim empathy, those sorts of things. Those are not present for Mr. Dyer. He has repeatedly not shown up to work, failed to obey orders. He's not taken -- he has taken his GED test, which is a positive thing, but he's not taken any vocational trades to prepare him for the free world. He had no jobs prior to coming to prison. So those sorts of things are different in the -- and, additionally, he has not developed victim empathy or understood why he offended or really how to prevent that in the future.

Appellant complains Dr. McGarrahan did not thereafter support her opinion with research, argues her "comment on what separates the other sex offenders from Mr. Dyer seems to indicate that this is her main quibble with him[,]" claims it "makes little sense that the perceived lack of things learned in treatment supports assigning risk to" Appellant, and Dr. McGarrahan "made it sound as if [Appellant] was unwilling to work at all." We disagree.

Appellant seemingly argues that every statement made by an expert must be accompanied by vocalized supporting research, or a vocalized assertion that research supports the statement. Dr. McGarrahan reviewed the records before she met with Appellant via TeleMed, evaluated Appellant for approximately three hours, and observed him throughout. She was free to opine on Appellant's personality characteristics and his stability in the prison system based on her

8

evaluation and the records she had before her. Dr. McGarrahan thoroughly explained the methodology she employs in behavioral abnormality evaluations and offered her expert opinion, based on the methodology she applied, which she confirmed was in accordance with her training and the accepted standards in the field of forensic psychology. We do not find her comment conclusory.

Appellant also complains that Dr. McGarrahan's assessment of his attitude toward his offenses and victims was based upon an interview that occurred before he successfully completed a nine-month treatment program. There is also a complaint by Appellant as to Dr. McGarrahan opining that Appellant had regular treatment as a teenager and despite "receiving treatment to help him understand victim empathy and to make sure that there are no victims in the future," he continued to reoffend. According to Appellant, he denied receiving treatment as a teenager and Dr. McGarrahan wrongfully relied on information provided by Appellant's relative that he had been sent to treatment, which was included in the records she reviewed.[3] Appellant maintains Dr. McGarrahan's opinion does not address curriculum and thus, is a "conclusory statement and condemnation" of Appellant. We disagree.

Appellant began sexually offending when he was around nine or ten years old. Appellant raped two seven-year-old females, and Dr. McGarrahan testified this was the first indication of sexual deviancy. Appellant was sixteen when he was caught and punished for committing another

---

[3]The State:      And was there anything in the record regarding any kind of counseling at this point?

Dr. McGarrahan:      There was a reference that Mr. Dyer's aunt had indicated that Mr. Dyer -- they sent him for treatment for this, quote, unquote problem.

The State:      And did he then go on to re-offend again after that punishment and counseling?

Dr. McGarrahan:      He did.

sexual offense. Dr. McGarrahan explained this is relevant to the question of behavioral abnormality because he went on to commit other sexual offenses after being caught and punished; he raped two seven-year-old siblings—a male and female. Dr. McGarrahan described the field refers to this as persistence after punishment, which "tends to be a fairly large risk factor. . . despite the fact that he's been caught and had negative consequences, he still persisted in engaging in this behavior again." He received a year of probation for this. Then, when Appellant was seventeen, he reoffended again against a three and a five-year-old—the three-year-old was a male whom Appellant anally raped, and the five-year-old was a female whom Appellant raped vaginally and anally. As to all these offenses, Dr. McGarrahan testified Appellant denied and minimized his actions, and referenced the five-year-old girl's chest by a rather derogatory term. According to Dr. McGarrahan, this is the objectification of victims, which allows Appellant to see the five-year-old as more of an equivalent, or an adult, and to him, makes it okay to engage in these behaviors. Dr. McGarrahan explained this allows the perpetuation of sexual abuse when someone, like Appellant, does not have the appropriate victim empathy and understanding of the risk to reoffend.

Whether Appellant had successfully completed a nine-month treatment program at the time Dr. McGarrahan evaluated him does not make her statement conclusory, nor does her reliance on the record she had before her at the time of her evaluation. Dr. McGarrahan testified Appellant persisted after punishment, which is an undisputed fact. *See King*, 657 S.W.3d at 27 ("The opinion that Appellant had the requisite behavioral abnormality, combined with the undisputed fact that Appellant had been convicted of multiple sexually violent offenses and was therefore a repeat violent sexual offender, constitutes legally sufficient evidence to prove beyond a reasonable doubt that Appellant is an SVP."). We recognize that expert testimony may not be admitted when "there is simply too great an analytical gap between the data and the opinion proffered." *In re*

10

*Commitment of Bohannan*, 388 S.W.3d 296, 305 (Tex. 2012). We do not find that to be the case here.

After considering the above information, and in forming her opinion, Dr. McGarrahan relied on her education, training, experience, the records she reviewed, Appellant's criminal history, her examination of Appellant, and applied risk factors and protective factors, diagnoses, and psychological testing instruments that are the standard in the field, in reaching her conclusion. We find the record supports some basis for Dr. McGarrahan's opinion and her opinion is not conclusory. *See King*, 657 S.W.3d at 27.

For these reasons, we find Dr. McGarrahan's opinion legally sufficient to support the jury's finding. Issue One is overruled.

## EVIDENTIARY CHALLENGE

### *Standard of Review*

We review the trial court's evidentiary rulings for an abuse of discretion. *In re Commitment of Hull*, No. 13-17-00378-CV, 2019 WL 3241883, at *8 (Tex. App.—Corpus Christi July 18, 2019, pet. denied). An abuse of discretion occurs when a trial court fails to follow guiding rules and principles. *Id.* Reversal is warranted only if the error probably caused the rendition of an improper judgment. *Id.* In making this determination, we evaluate the entire case, considering the role the evidence played in the context of the trial. *Id.*

### *Applicable Law*

A diagnosis is not required to commit a person as a sexually violent predator. *In re Commitment of Cordova*, 618 S.W.3d 904, 911 (Tex. App.—El Paso 2021, no pet.). The Texas Civil Commitment of Sexually Violent Predators Act (the Act), does not prescribe the qualifications an expert must have to opine on whether an individual is a sexually violent predator.

*In re Commitment of Bohannan*, 388 S.W.3d at 303. Medical and psychiatric testimony, a constitutional prerequisite for committing a person of unsound mind, is not required in sexually violent predator proceedings. *Id.* at 304. Accordingly, the Texas Constitution does not prohibit evidence from an expert who is not a physician in a sexually violent predator commitment proceeding. *Id.* As the Texas Supreme Court has articulated, "[a]bsent more specific statutory direction, we apply the general rule, which is that an expert must be qualified 'by knowledge, skill, experience, training, or education' to 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.*

### *Analysis*

Appellant argues the trial court abused its discretion in admitting the deposition transcript of Ms. Engman. More specifically, Appellant maintains the trial court erred in admitting the deposition transcript because Ms. Engman had not been qualified in the deposition as an expert, which according to Appellant, is required. Appellant does not provide authority in support of his contentions, nor are we aware of any. We find the trial court did not abuse its discretion in admitting the deposition transcript of Ms. Engman.

According to Appellant, "[s]ince, in a civil case, testimony by deposition is always admissible, regardless of the witnesses' availability, the idea that all civil litigants can avoid qualifying their experts by admitting only questioning by the opposing party is ludicrous." The State intended to offer Ms. Engman, but offered her deposition transcript instead due to her being ill and thus unavailable to testify the morning of trial. Her unavailability as a witness is not a requirement for admissibility. *See* TEX. R. EVID. 801(3). In any case, Ms. Engman's resume provides she has a bachelor's degree in psychology and a master's degree in clinical psychology. She is a licensed psychological associate, sex offender treatment provider, and professional

12

counselor. Ms. Engman has over twenty years of experience in treating and evaluating sex offenders. In the TDCJ, she managed the sex offender treatment program, assisted in the civil commitment review process, and has also provided court testimony in civil commitment hearings. She also has experience supervising and training clinical staff.

The deposition at issue is about fifty pages long. In the deposition, Ms. Engman stated about "99 percent" of her work is comprised of working with sex offenders, and most of her evaluations are for the purposes of treatment and risk assessment, and a small percentage of work focuses on forensic evaluations. Her clinical work involves treating sex offenders and sexual disorders. Ms. Engman was among the first in the field to conduct behavioral abnormality evaluations.

Regarding Appellant, Ms. Engman was retained by the Special Prosecution Unit to evaluate him and recommend her opinion as to whether he has a behavioral abnormality. Ms. Engman reviewed over 600 pages of records and employed the Static-99R, the Hare, utilized risk factors as part of her methodology, and evaluated Appellant herself via the TeleMed system. These are all the same methods Dr. McGarrahan employed. Ms. Engman identified several risk factors that Dr. McGarrahan also identified in Appellant: lack of concern for others, intimacy deficits, deviant sexual interests, impulsive acts, poor coping mechanisms/poor cognitive problem solving, callousness, and poor self-regulation. Throughout her deposition, Ms. Engman thoroughly defined and explained the associated medical terms she used in her assessment of Appellant.

Ms. Engman made clear she did not diagnose Appellant, but rather, made diagnostic recommendations; what she does is review, then provides recommendations for the physician to help consider in their review and determination. She hypothesized that Appellant has pedophilic disorder and an antisocial personality disorder, and she explained the requirements for each and

why she recommended the diagnoses. She believed Appellant is at a high risk to sexually reoffend against children and has a high level of psychopathic traits that contribute to his likelihood of reoffending. Ms. Engman ultimately concluded Appellant suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

At trial, the State sought to admit and read into evidence the deposition transcript of Ms. Engman. Appellant objected that the reading of the deposition was cumulative evidence, and Ms. Engman was not qualified as an expert. The State responded it is a consideration of one's knowledge, training, and experience that allows for expert qualification, not the type of license one holds. The State then informed the trial court of Ms. Engman's experience and qualifications. The trial court asked whether the facts as to her experience and qualifications was within the deposition transcript. The State confirmed it was and relayed what was contained in the deposition transcript as to Ms. Engman's experience and qualification, and argued the defense had the opportunity to qualify and cross examine her as it was the defense who noticed and deposed her. The State emphasized to the trial court that Ms. Engman's resume was one of the exhibits admitted at her deposition and is the same resume the State sought to admit at trial to qualify Ms. Engman as an expert. The trial court confirmed this. The State then walked the trial court through the deposition transcript, confirming that in her deposition, Ms. Engman discussed her qualifications, education, and experience. The trial court ultimately overruled the objections, qualified Ms. Engman as an expert, and the deposition transcript was read to the jury.

The Texas Supreme Court has clarified, "[t]he test is whether the offering party [has] establish[ed] that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Id.* (internal quotation marks omitted). As the offering party, the State established

Ms. Engman's knowledge, skill, experience, and training. Moreover, the deposition transcript itself also establishes Ms. Engman's knowledge, skill, experience, and training. Ms. Engman's opinion assisted the trier of fact to determine the fact at issue—whether to civilly commit Appellant because he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Accordingly, we hold the trial court did not abuse its discretion in admitting the deposition transcript of Ms. Engman and allowing it to be read to the jury. Issue Two is overruled.

## CONCLUSION

For these reasons, we affirm.

YVONNE T. RODRIGUEZ, Chief Justice

June 23, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.