**AFFIRM; and Opinion Filed May 31, 2024**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-23-00671-CV**

## IN RE THE COMMITMENT OF RANDY LEE GANT

**On Appeal from the 354th Judicial District Court**
**Hunt County, Texas**
**Trial Court Cause No. 90616**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Smith
Opinion by Justice Smith

Respondent Randy Lee Gant appeals from a final judgment and an order of commitment signed by the trial court on a jury's finding that he is a sexually violent predator. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.153. In three issue, Gant challenges the legal and factually sufficiency of the evidence to support the jury's finding and the trial court's requirement that he wear a stun belt in the courtroom. We affirm the trial court's final judgment and order of commitment.

## Factual and Procedural Background

In 1992, Gant was convicted of sexually assaulting his step-daughter W.P., who was eleven years old at the time. The trial court placed Gant on community supervision for a term of ten years. While on community supervision, Gant sexually assaulted H.R., an eight-year-old. In 1997, the trial court revoked Gant's community supervision and sentenced him to four years' confinement. And, in 1999, Gant was convicted of the aggravated sexual assault of H.R. and sentenced to forty-five years' confinement. He is presently serving that sentence.

In 2021, the State filed a petition alleging that Gant is a sexually violent predator and requesting that he be committed for treatment and supervision pursuant to Texas Health and Safety Code Chapter 841, known as the Texas Civil Commitment of Sexually Violent Predators Act (the Act). *See id*. According to the petition, Gant's participation in the state's Sex Offender Treatment Program was pending and could result in his early release on parole prior to his scheduled discharge date in 2026.[1] In April 2023, the trial court held a jury trial on the State's petition. The court admitted into evidence, among other exhibits, Gant's convictions, and Gant and the State's expert, Darrel Turner, Ph.D., testified.

---

[1] The Texas Department of Criminal Justice begins the commitment procedure by notifying "an established multidisciplinary team of the anticipated release date of a person who is serving a sentence for a sexually violent offense and 'may be a repeat sexually violent offender.'" *In re Commitment of Stoddard*, 619 S.W.3d 665, 669 (Tex. 2020) (quoting TEX. HEALTH & SAFETY CODE ANN. § 841.021(a)).

At the time of trial, Gant was sixty-one years old. He testified that he was convicted of knowingly and intentionally causing the sexual organ of W.P. to contact his mouth. He told police that he had performed oral sex on W.P., but he denied doing so at trial. Gant was shown a parole interview in which he reported having sexually abused W.P. every other week over the course of eight months, but he testified that he did not recall making the report and did not believe that happened. He admitted only to touching W.P.'s breasts over her clothes one time and, another time, touching her buttocks. Gant acknowledged having a sexual attraction to children at the time. He had learned that W.P. was sexually active and started having sexual thoughts about her. He bought her clothes and gifts so she would engage in sexual activity with him and assumed that W.P. wanted to engage in sexual activity with him.

Gant testified that he did not learn anything from sex offender treatment he received while serving community supervision for sexually offending W.P. And, although he was not supposed to have unsupervised contact with children, he began a romantic relationship with H.R.'s mother. Among other things, Gant asked H.R. to put his penis in her mouth. Another time, according to Gant, H.R. encountered Gant masturbating and took off her shorts; Gant helped her get on top of him, where she "jumped up and down." Gant also sexually abused H.R. in a backyard shed. Gant was convicted of penetrating H.R.'s vagina with his penis, but denied doing so at trial. He knew it was wrong to commit a sexual offense against a child, but did it

anyway. He thought H.R. wanted to engage in sexual activity with him. Gant testified that he "hadn't learned about [his] patterns and stuff yet, so [he] didn't think anything was wrong with it at the time."

Gant also testified to touching the breasts of his fourteen-year-old daughter, with whom he reconnected while on community supervision. In a voluntary statement for law enforcement, Gant had indicated that he tried to remove S.'s shorts, touched her breasts under her clothes, and had fantasies about S. after their second or third visit. At trial, he did not remember that. Gant had dated S.'s mother, then sixteen years old, when he was twenty or twenty-one. S.'s mother became pregnant, and Gant had been accused of committing a sexual offense against her.

Gant testified that he masturbated to sexual thoughts of children when he first was in prison. He received "sexual misconducts" in prison for intentionally exposing his genitals to correction officers. He also called female correction officers over to his cell to watch him masturbate. According to Gant, that type of behavior was common in prison; he did not know if the behavior was normal and acknowledged that it was problematic for him. He was last disciplined for sexual misconduct in 2015.

While in prison, Gant received job training, earned a workplace skills education certificate, completed a construction safety class, and participated in a faith-based program. In September 2022, he finished a nine-month sex offender treatment program, receiving a rehabilitation program certificate from the Texas

Department of Criminal Justice. During the program, he discussed offending W.P., but did not remember admitting that he performed oral sex on her. He also discussed offending H.R., but did not remember if he discussed offending S. He learned about offense cycles, irrational beliefs, and that he could not be with women that have young children. He also learned strategies, including leaving certain situations and adjusting his thinking, and the importance of accepting responsibility for his sexual offending.

Gant planned to continue counseling and live with his brother if released on parole. He wanted to work as a forklift driver. He also planned to stay away from women with young children, not put himself in the presence of anyone under seventeen, work his program, and find a mentor and sex offender support group. Gant testified that, "as far as [he] know[s]," his sexual attraction to children had gone away. However, he believed that, with his history, he is at risk to reoffend sexually.

Dr. Turner, a licensed clinical psychologist, testified that he was retained to evaluate Gant and form an opinion on whether Gant had a behavioral abnormality that made him likely to commit additional sexual offenses. Dr. Turner's curriculum vitae was admitted into evidence, and he testified about his education, training, and experience. He reviewed Gant's law enforcement, court, and prison records, information about Gant's medical psychiatric history, and deposition testimony that Gant gave in this case. He also met with Gant via video conference. Relying on these items and principles of forensic psychology, Dr. Turner formed the clinical

opinion that Gant suffered from a behavioral abnormality that made him likely to engage in predatory acts of sexual violence.

The jury found beyond a reasonable doubt that Gant was a sexually violent predator. The trial court entered judgment in accordance with the jury's finding and ordered Gant committed for treatment and supervision to commence upon his release from prison. Gant filed a motion for new trial, which was overruled by operation of law, and this appeal followed.

## Civil Commitment

The Act provides "a civil-commitment procedure for the long-term supervision and treatment of sexually violent predators." TEX. HEALTH & SAFETY CODE ANN. § 841.001. At trial, the factfinder must determine "whether, beyond a reasonable doubt, the [respondent] is a sexually violent predator." *Id.* § 841.062(a). A "sexually violent predator" is a "repeat sexually violent offender" who "suffers from a behavioral abnormality that makes the [respondent] likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). A behavioral abnormality is "a congenital or acquired condition that, by affecting [the respondent's] emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the [respondent] becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

## Sufficiency of the Evidence

In his first and second issues, Gant challenges the legal and factual sufficiency of the evidence to support the trial court's judgment and order of commitment. Because the determination that a person is a sexually violent predator must be made beyond a reasonable doubt, *id.* § 841.062(a), our legal-sufficiency standard of review mirrors that of criminal cases. *See Stoddard*, 619 S.W.3d at 675. We review the evidence in the light most favorable to the State to determine whether "any rational trier of fact could have found the essential elements beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). For a factual sufficiency challenge, we determine "whether, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of the verdict, along with the undisputed facts contrary to the verdict, is so significant that the factfinder could not have determined beyond a reasonable doubt that the statutory elements were met." *Id.* at 678. Whether reviewing for legal or factual sufficiency, we must presume that "the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so." *Id.* at 676.

### 1. Legal Sufficiency

In his first issue, Gant asserts that the evidence is legally insufficient to support the jury's finding that he is a sexually violent predator because, without the "misleading, conclusory, and speculative testimony" of Dr. Turner, no rational factfinder could have found, beyond a reasonable doubt, the required elements for

commitment. Specifically, Gant complains that Dr. Turner did not disclose the material upon which he relied, his opinion was not based on statistical evidence, and he did not discuss "levels of risk" associated with identified risk factors or demonstrate that the risk factors were accepted within the scientific community as valid or "actually accurate predictors of future behavior." Gant also asserts that Dr. Turner improperly addressed Gant's likelihood of reoffending instead of "what would make [him] as risk free as possible."

An expert witness must link his conclusions to facts and explain the basis of his assertions. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 223 (Tex. 2019). If the expert asserts a conclusion with no basis, his testimony is conclusory. *Id.*; *see Arkoma Basin Expl. Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008) (expert testimony is conclusory if the expert merely gives an unexplained conclusion or asks the jury to "take my word for it" because of the expert's status as an expert). Opinion testimony that is wholly conclusory or speculative constitutes no evidence "because it does not tend to make the existence of a material fact 'more probable or less probable.'" *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (quoting *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004)).

Gant largely challenges the methodology Dr. Turner followed in forming his opinion, asserting that "Dr. Turner's opinion was not based on statistical evidence scientifically supporting his recidivism prediction" and that "Dr. Turner's opinion is

–8–

not based on data that supports his conclusions." "[W]hen a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis." *Pollock*, 284 S.W.3d at 817 (quoting *Coastal Transp.*, 136 S.W.3d at 233). Here, Gant did not object that Dr. Turner's opinion was unreliable before or during trial, so he must show that there is no basis to support it. *See id.* at 816–18.

Dr. Turner, who earned a doctorate degree in clinical psychology with a focus on forensic psychology, testified about his credentials and extensive experience in conducting behavioral abnormality evaluations. He explained that he relied on principles of forensic psychology, a legitimate field of expertise, in forming his opinion. He also described the methodology he followed, which included reviewing relevant records on the offender to familiarize himself with the offender and the case, considering the offender's history of behavior and patterns of behavior and how the offender responds and thinks, scoring a psychopathy test, and examining factors shown by research to either increase or decrease an offender's risk of reoffending. Dr. Turner learned this methodology in school; it was in accord with his training in forensic psychology and the same methodology used by others for these evaluations in Texas and across the county. The records and other materials that Dr. Turner reviewed were the types of materials relied on by experts in his field, and he

performed his evaluation in accordance with his training as a professional in his field.

Dr. Turner explained his understanding of the statutory definition of behavioral abnormality and that, using the methodology he described, he had formed the opinion that Gant suffers from a behavior abnormality that makes him likely to offend sexually. Dr. Turner identified sexual deviance and antisocial personality makeup, or evidence of psychopathy, as factors that pose the greatest risk for reoffending sexually. He diagnosed Gant with both pedophilic disorder, a sexual deviance characterized by an ongoing pattern of sexual arousal and attraction to prepubescent children, and antisocial personality disorder. In doing so, he relied on the DSM-5, a book containing criteria used by clinicians to diagnose certain disorders.

Evidence relevant to Dr. Turner's pedophilic disorder diagnosis included Gant's offenses, the ages of his victims, his pattern of giving himself access to his preferred victim type, the existing family/parent-type relationships with his victims, which resulted in a power differential, his inability to control his behavior, and his use of grooming behaviors. Dr. Turner also testified that Gant's inconsistent reporting and minimization of his offending conduct was evidence of his current sexualization of children and pedophilic interests. As further evidence, Dr. Turner cited some of Gant's trial testimony, which essentially blamed his victims. For example, his testimony that H.R. removed her shorts and approached Gant while he

was masturbating attributed sexual desires and motivations to a child and was very strong evidence of active pedophilia and sexual deviance.

Dr. Turner acknowledged that Gant's offenses occurred in the 1990s. But he testified that, once a pattern is clear, pedophilic disorders are lifelong. Further, Gant had reported to Dr. Turner that he had masturbated to thoughts of his child victims four or five years earlier and had testified by deposition only months before trial that he was sexually attracted to children. Gant also engaged in sexually deviant behavior in prison and, when asked during his deposition why he masturbated to female staff, he said something to the effect that there were no children in prison. To Dr. Turner, Gant's pedophilic disorder is currently affecting his emotional and volitional capacity.

Dr. Turner also diagnosed Gant with antisocial personality disorder, which is characterized by not caring about the rules or other people, a lack of empathy, impulsiveness, and compulsive lying. Dr. Turner based the diagnosis on behaviors Gant engaged in as a child, his lack of remorse, his blaming the victims, and his lifestyle of offending and victimizing children. Although the intensity of the disorder can lessen as people age, it is a congenital or acquired condition that does not go away and can affect a person's emotional or volitional capacity.

Dr. Turner assessed Gant for psychopathy using the Psychopathy checklist-revised (PCL-R), an instrument on which Dr. Turner was trained and had scored many tests. Gant received a score in the upper range of a high degree of

psychopathic characteristics, a risk factor that indicates he currently has a high degree of psychopathic traits. According to Dr. Turner, being a psychopath is "very similar to having a strong case of antisocial personality disorder." Dr. Turner also considered a prior score that Gant received on the Static-99R, an actuarial risk assessment used to measure an offender's risk to be caught or convicted if they reoffend. Gant scored at a below average risk level. Dr. Turner testified, however, that he no longer scores the Static-99 himself because some circles of professionals are finding problems with the instrument.

Dr. Turner acknowledged that one must have a conduct disorder by age fifteen to be diagnosed with antisocial personality disorder, and Gant never had any juvenile delinquency. Dr. Turner also identified protective factors, which may lower the risk of Gant reoffending sexually. These included Gant's age, job training and classes, faith-based work, lack of nonsexual criminal history, and family support. Records also indicated that Gant's sex offender program graduating marks were good. For Dr. Turner, however, those protective factors were not enough to change his opinion. It was significant to Dr. Turner that Gant had admitted to more offending behavior during the program than he did during his meeting with Dr. Turner, in his deposition, or at trial. It indicated that Gant was reverting to minimizing the offenses. Dr. Turner did not see that Gant had the serious insight into himself and his offenses that would be needed to show that he no longer has a behavioral abnormality.

Our review of the records shows that Dr. Turner explained the accepted methodology that he followed, identified the facts that formed the basis of his opinion, and explained why they did so. His testimony was neither conclusory nor speculative. *See, e.g.*, *In re Commitment of Sawyer*, No. 05-17-00516-CV, 2018 WL 3372924, at *7 (Tex. App.—Dallas July 11, 2018, pet. denied) (mem. op.) (expert's opinion that appellant suffered from behavioral abnormality was not conclusory or without foundation where expert testified that: (1) she was forensic psychologist who had performed more than sixty similar evaluations; (2) she used same methodology followed by other experts; (3) she reviewed many records related to appellant, including conviction and prison records; (4) she interviewed appellant; and (5) she used PCL-R, STATIC-99R, and SVR-20 risk assessment measuring tools); *In re Commitment of Summers*, No. 01-19-00738-CV, 2021 WL 3776751, at *13 (Tex. App.—Houston [1st Dist.] Aug. 26, 2021, no pet.) (mem. op.) (when experts (1) explained accepted and routinely-used methodology that they employed to formulate opinions, (2) offered bases for their opinions, including interviews and review of records, and (3) explained why information relied on supported their opinions, experts' testimony was not conclusory and had probative value.). Having reviewed the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt, we conclude that Dr. Turner provided some evidence to prove the required behavioral-abnormality element and support the jury's finding that Gant was a

sexually violent predator. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.002(2), 841.003(a). We overrule Gant's first issue.

### 2. Factual Sufficiency

In his second issue, Gant contends the evidence is factually insufficient to support the conclusion that he could not control a sexual impulse to commit a violent offense. He points to the "undisputed" evidence that he completed treatment, his risk is below average statistically, he has worked to improve himself through faith-based and vocational courses, he does not have recent sexual misconducts, and his last offense was decades ago. The jury, however, also heard Dr. Turner's opinion that Gant is sexually deviant and has an antisocial personality—significant risk factors for sexually reoffending. The evidence showed that Gant persisted in sexually offending after being caught and punished for sexually assaulting W.P. The jury heard Gant's own testimony denying and minimizing his sexual offenses against W.P. and H.R. and admitting to sexual misconduct while incarcerated. Despite receiving sex offender treatment on two occasions, Gant testified that he did not know why he sexually offended W.P., H.R., and S. He testified that he was no longer sexually attracted to children "as far as" he knew; Dr. Turner, however, testified that Gant did not have the tools necessary to manage and control his sexual deviancy.

The jury, as factfinder, was charged with weighing the evidence, judging the credibility of the testimony presented, and resolving any conflicts in the evidence. *See Stoddard*, 619 S.W.3d at 668. We must presume that it resolved any disputed

–14–

evidence in favor of its finding that Gant is a sexually violent predator. *See id.* at 668, 674.  And, in light of the entire record, we cannot conclude that the disputed evidence that a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict, is so significant that the jury could not have found beyond a reasonable doubt that Gant suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.003(a)(2), 841.062(a).  Accordingly, we conclude that there was factually sufficient evidence to support the jury's finding. We overrule Gant's second issue.

### Stun Belt Use

In a third issue, Gant complains of the trial court's "blanket policy" requiring "felony defendants" to wear a stun belt in court.  Gant failed to object to the policy in the trial court and, except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties.  *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006); TEX. R. APP. P. 33.1.  Gant asks the Court to conclude that the policy is adverse to the public interest and, therefore, fundamental error.

This commitment proceeding is civil in nature.  *See In re Commitment of Fisher*, 164 S.W.3d 637, 653 (Tex. 2005); *In re Commitment of Martinez*, 98 S.W.3d 373, 375 (Tex. App.—Beaumont 2003, pet. denied) (per curiam).  And, as the State correctly points out, the fundamental error doctrine is rarely applied in civil cases.

–15–

*See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 510–15 (Tex. 2018); *Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex. 1982) (per curiam). At most, it applies when: (1) the record shows on its face that the trial court lacked subject matter jurisdiction; (2) the alleged error occurred in a juvenile delinquency case and falls within a category of error as to which preservation of error is not required; and (3) the error directly and adversely affects the interest of the public generally, as that interest is declared by a Texas statute or the Texas Constitution. *See Mack Trucks*, 206 S.W.3d at 577; *In re B.L.D.*, 113 S.W.3d 340, 350–51 (Tex. 2003).

Here, Gant asserts that the trial court's policy requiring felony defendants to wear a stun belt "implicates the public interest, as any Texas citizen could be accused of a crime and subjected to this indignity." Gant, however, acknowledges that he is not on trial for a felony and instead is a defendant in a civil commitment action, which applies only to a limited class of people. Because Gant does not demonstrate that the alleged error in this case directly and adversely affects the interest of the public generally as that interest is declared by a Texas statute or the Texas Constitution, we conclude the fundamental error doctrine does not apply. Accordingly, we overrule Gant's third issue.

## Conclusion

Having overruled each of Gant's issues, we affirm the trial court's final judgment and order of commitment.


/Craig Smith/
CRAIG SMITH
230671F.P05                                    JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN RE THE COMMITMENT OF
RANDY LEE GANT

No. 05-23-00671-CV    V.

On Appeal from the 354th Judicial
District Court, Hunt County, Texas
Trial Court Cause No. 90616.
Opinion delivered by Justice Smith.
Justices Partida-Kipness and Nowell
participating.

In accordance with this Court's opinion of this date, the trial court's final judgment and order of commitment are **AFFIRMED**.

Judgment entered this 31st day of May 2024.